23 N.J. Super. 204 (1952)
92 A.2d 832
MARTHA TRISOLINI, PLAINTIFF-APPELLANT,
v.
LIEBGARD M. MELTSNER, GUIDO OR GUY TRISOLINI, AND GUY TRISOLINI, JR., A MINOR, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 1952.
Decided December 3, 1952.
*205 Before Judges EASTWOOD, PROCTOR and FRANCIS.
Mr. Anthony P. La Porta argued the cause for plaintiff-appellant.
Mr. Robert W. Emery argued the cause for defendant-respondent Liebgard M. Meltsner.
*206 Mr. Abraham M. Nickelsporn argued the cause for defendant-respondent Guido or Guy Trisolini.
The opinion of the court was delivered by FRANCIS, J.C.C.
Appellant Martha Trisolini and the respondent Guido or Guy Trisolini are husband and wife; respondent Guy Trisolini, Jr. is their adopted infant son, and respondent Liebgard M. Meltsner is an alleged participant in an amour with the husband.
Appellant filed a complaint against respondents in the Chancery Division of this Court containing two counts. It charges that respondents, Trisolini and Meltsner, "are madly in love with each other and they have conspired and agreed and combined themselves together to go out and consort together as sweethearts and they have done everything that is humanly possible to break up plaintiff's marriage" with Trisolini. The count further charges that in order to break up the marriage respondent Meltsner wrote two letters to appellant, one dated April 28, 1949 and the other April 27, 1951, which are included at length therein; that on April 29, 1951 Trisolini abandoned appellant leaving a note giving untrue reasons for his action in doing so, when in truth the departure was in furtherance of the conspiracy to terminate the marriage; that her husband and Liebgard Meltsner have been "romancing" together since 1946 to the present time; that at times they took appellant's son along with them to various places and engaged in immoral conduct in his presence; that as a result the son has become unruly and delinquent and guilty of immoral practices; and that Trisolini is unfit to have custody of the boy. The son was made a defendant "so that a full hearing will be accorded to him."
The relief sought is an injunction enjoining Liebgard Meltsner from (1) interfering with appellant's "bonds of matrimony," (2) from interfering with appellant and writing anonymous letters to her, (3) from "romancing with or going out with" her husband, and (4) from taking her *207 son out with them or associating together in his presence. Also prayed for is a proper order for the custody of the child.
Both respondents through individual counsel moved to dismiss the complaint as not stating an equitable cause of action. The motions were granted; hence this appeal.
It appears that prior to the institution of this action appellant had brought a separate maintenance suit against her husband, alleging a simple abandonment and seeking custody of the child. The proceeding is still pending and awaiting hearing. In the earlier action appellant had been allowed support pendente lite and also had been given temporary custody of the adopted son. While the custody order is not in the appendix it appears without dispute that Trisolini had custody one day a week for eight hours.
The custody count of the complaint herein was dismissed on the ground that the issue was already pending and therefore the second suit was unnecessary and vexatious. It was plain to us from the record that any relief with respect to custody should be had in the separate maintenance case. If the eight-hour visitation of the father was making possible the child's exposure to immoral conduct, the matter could have been presented immediately to the trial court on an application to cancel that privilege. However, since the record before us did not indicate that any such proceeding had been taken, we inquired at the oral argument as to why it had not been done and were informed that following the dismissal of this action the matter had been presented to the advisory master and, by stipulation of the parties, the father's right of visitation had been withdrawn pending final hearing. On these facts not only was the dismissal of the custody claim a proper action but the issue is now moot as well.
With respect to the prayer for injunctive process against the respondent Meltsner we are aware that in certain situations some jurisdictions have granted and others have denied restraints designed to safeguard personal rights arising from *208 domestic relations. See Annotation, 175 A.L.R. 478. Generally speaking, in the comparatively few cases on the subject the pleadings clearly disclosed an unlawful attempt by a third person to interfere with the marital status existing between husband and wife.
It is not necessary to decide in this proceeding what view should be taken by the courts of New Jersey in cases of the type wherein injunctive relief has been granted in other jurisdictions. The complaint here does not allege an unlawful attempt by respondent Meltsner to entice away appellant's husband or to alienate his affections. The allegation is that respondents "are madly in love with each other," have agreed "to consort together as sweethearts," and have engaged in immoral practices. And it is asserted that "to break up" the marriage, respondent Meltsner wrote the two letters to appellant, one over three years and the other more than a year prior to the institution of the suit. The first letter was a single line: "Why don't you drop dead??" And the second apprised the wife that her husband had been in love with another woman for over two years and inquired: "Why not give him a divorce and avoid impending tragedy."
It must be kept in mind that injunction is an extraordinary remedy; that it should be used sparingly and only where the proven equities establish a clear need. 28 Am. Jur., Injunctions, sec. 3, p. 198. "`There is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, and which is more dangerous in a doubtful case, than the issuing of an injunction.'" Citizens Coach Co. v. Camden Horse R.R. Co., 29 N.J. Eq. 299, 303 (E. & A. 1878). When the aid of the "strong arm of equity" (1 High, Injunctions, sec. 22) is sought in a case of novel impression, not only should the right be clear, but the facts giving rise to the claim of right should be clear as well.
Where acts complained of are infractions of the criminal law  and presumably the immoral acts complained of here are such  equity will not on that ground alone issue *209 its injunctive process to prevent their commission. Hedden v. Hand, 90 N.J. Eq. 583 (E. & A. 1919); Pomeroy, Equity Jurisprudence, sec. 1347; 1 High, Injunctions, sec. 20; 28 Am. Jur., Injunctions, sec. 148, p. 336. Such violations are left to the agencies charged with the enforcement of the criminal law.
The only conduct which is directly and specifically charged as engaged in "to break up" the marriage is the sending of the two letters to which reference has been made. As indicated, this was done over three years, and over one year prior to the filing of the complaint herein and there is no allegation of any kind of a threat to continue such letters or any recitation of facts showing a probability of repetition.
An injunction is a preventive measure; its province is to afford relief against future acts actually threatened or apprehended with reasonable probability. Weiss v. Levine, 133 N.J. Eq. 441 (Ch. 1943); Hodgeman v. Olsen, 86 Wash. 615, 150 P. 1122, L.R.A. 1916A, 739 (Sup. Ct. 1915); 28 Am. Jur., Injunctions, sec. 7, p. 201; 1 High, Injunctions, sec. 23, p. 21.
Under all the circumstances shown by this record, we concur in the opinion of the trial court that the complaint does not present a claim for injunctive relief.