ANGELO CALI, JOHN CALI AND EDWARD LESHOWITZ, PLAINTIFFS-RESPONDENTS, v. NEW JERSEY STATE COMMISSION OF INVESTIGATION, *ET AL.*, DEFENDANTS-APPELLANTS.

Argued June 5, 1973—Decided July 5, 1973.

*Mr. Martin G. Holleran* argued the cause for the appellants (*Mr. B. Dennis O'Connor,* of counsel and on the brief).

*Mr. Martin L. Haines* argued the cause for the respondents (*Messrs. Dimon, Haines and Bunting,* attorneys).

PER CURIAM: The Chancery Division entered a summary judgment which restrained the defendants New Jersey State Commission of Investigation (S. C. I.) and its members from "conducting any public hearing relating to the con-

tent or subject matter of any private hearing in which the Plaintiffs, or any of them, heretofore participated." The defendants duly appealed to the Appellate Division and we certified before argument there.

The S. C. I. was created by statute in 1968 and was empowered to conduct investigations in connection with the enforcement of the laws of the State, the conduct of public officers and employees, and any matters concerning the public peace, public safety and public justice. *L. 1968, c. 266; N. J. S. A.* 52:9M–1 *et seq.* As pointed out in *Zicarelli* (55 *N. J.* 249, 261 (1970)), it was created "to discover and to publicize the state of affairs in a criminal area, to the end that helpful legislation may be proposed and receive needed public support." The statute has withstood constitutional attack (*Zicarelli, supra, aff'd,* 406 *U. S.* 472, 92 S. Ct. 1670, 32 *L. Ed. 2d* 234 (1972); *United States ex rel. Catena v. Elias,* 465 *F. 2d* 765 (3 Cir. 1972)) and the Commission has conducted many private hearings as well as some public hearings in accordance with its announced practices and the terms of the statutory code of fair procedure. *L. 1968, c. 376; N. J. S. A.* 52:13E–1 *et seq.*

In 1972 the S. C. I. initiated an investigation of municipal corruption in the area of "land use, zoning, planning, etc." Its purpose was to determine whether patterns of municipal corruption were extant in the stated area and, if so, what corrective or safeguarding legislation should be recommended. In April, 1972, S. C. I.'s counsel, Charles D. Sapienza, learned that the plaintiff Edward Leshowitz might be helpful in connection with alleged "payoffs and corruption" in a particular town. Mr. Leshowitz was asked to come in and he did so, first wthout counsel and later with his attorney Sanford Halberstadter. Mr. Halberstadter testified that he requested "that we be afforded a writing indicating that whatever we discussed would be confidential and would not be disclosed"; he testified further that a writing was received but examination of it establishes that it was much

narrower in terms. It simply set forth that Mr. Halberstadter and Mr. Sapienza had agreed to the following:

> It is understood by all present in this room that Mr. Leshowitz has consented to be interviewed today, based on the understanding that Mr. Charles D. Sapienza will seek from the State Commission of Investigation a grant of immunity, and will also notify all federal, state and other local prosecutorial authorities that he is seeking a consent to this grant of immunity.
>
> It is understood that if a grant of immunity is not forth-coming, all statements made by Mr. Leshowitz in this particular interview will be held in confidence by the parties in this room and not released to anyone, and will not be utilized against him.

Mr. Leshowitz was later granted immunity by the Commission (*N. J. S. A.* 52:9M–17) and as a result any suggestion of confidentiality grounded on the writing clearly has no substance. Mr. Halberstadter testified in effect that he and Mr. Leshowitz understood from oral statements made by Mr. Sapienza that the testimony given in private by Mr. Leshowitz would remain private except if needed by the prosecutor in connection with criminal prosecutions against others. But Mr. Sapienza denied making any statements which could fairly be interpreted as embodying a promise that Mr. Leshowitz would not later be called upon to give his testimony at a public hearing if the Commission considered that course appropriate in the exercise of its statutory functions. He testified that "the premise on which Mr. Leshowitz received his immunity was that, number one, he would have to testify truthfully and openly and aid the Commission in whatever way he could, but there was no promises nor discussion about Mr. Leshowitz testifying at a public hearing. That didn't enter into the picture." Indeed, though Mr. Halberstadter stressed his understanding of general confidentiality, he acknowledged that he was aware that the Commission had in the past conducted public hearings and that here "the question of public hearings never came up."

After Mr. Leshowitz had privately testified, Mr. Halberstadter arranged for the taking of testimony in private of Mr. Leshowitz's associates, Mr. John J. Cali and Mr. Angelo R. Cali. A written statement in the same terms as the one executed by Mr. Sapienza and Mr. Leshowitz was executed by Mr. Sapienza and the Messrs. Cali and immunity was later granted to Messrs. Cali by the Commission. Mr. John Cali testified that "Mr. Sapienza said that he would do everything in his power to keep our names from public notice, and that even if it came to prosecution, he would make every effort also in that instance to keep us from coming to light." He acknowledged that "the question of public hearings was just never brought up." Mr. Angelo Cali testified that he was told there "would not be a public disclosure" but he also acknowledged that Mr. Sapienza did not tell him that he would not have to testify at a public hearing.

Mr. Sapienza testified that only the Commission could grant immunity or determine that no public hearing would be held and that he had no such authority. He denied that he had promised there would be no public hearing and two agents of the Commission who were present during his interviews with the plaintiffs gave corroborative testimony in support of his denial. In response to an inquiry by plaintiffs' counsel as to whether he had made any representations that he would use his best efforts to see that their names "did not surface" Mr. Sapienza replied: "I told them that I would do my best to see that in that investigation, when I was talking in the field to people, that I would not let those people know that I had gotten the information from the Cali brothers."

After the plaintiffs had completed their private testimony the Commission determined that a public hearing should be held during which the plaintiffs would be called upon to testify. See *N. J. S. A.* 52:9M–11, 12. On September 8, 1972 the Commission adopted a resolution for such public hearing in strict accordance with *N. J. S. A.* 52:9M–12.

*Cf. N. J. S. A.* 52:13E–8. On September 15, 1972 the plaintiffs filed their verified complaint in the Chancery Division alleging that the Commission, through its counsel, had represented that the contents of their private testimony and the fact of their testimony and cooperation "would be held secret" and that the Commission's action in calling on them to testify at a public hearing not only violated "its agreement" but was "unconscionable and inequitable." The complaint sought to enjoin the public hearing and to restrain the Commission from "publicizing the information previously supplied to the defendants by the Plaintiffs, except to other law enforcement authorities, and except in the event criminal prosecutions are undertaken against third parties involving the matters concerning which the Plaintiffs have testified."

The Chancery Division was of the opinion that it lacked jurisdiction and accordingly, on September 18, 1972, it denied the plaintiffs' application for relief. On the same day a motion for leave to appeal and for an interim stay was made to the Appellate Division. That court granted a stay and remanded the matter to the Chancery Division to determine whether any confidentiality agreements had been entered into between the parties. The Commission then applied to this Court for leave to appeal and for vacation of the stay. We immediately directed the parties to attend the hearing in the Chancery Division. The hearing was held and the Chancery Division made fact findings in favor of the plaintiffs. Thereafter we granted leave and vacated the stay. The plaintiffs then amended their complaint, apparently for the purpose of setting forth alleged constitutional issues. They also moved for summary judgment and their motion was granted by the Chancery Division on the basis of its earlier fact findings. The defendants duly appealed from the summary judgment and filed a brief attacking the Chancery Division's fact findings. In their responsive brief the plaintiffs supported the fact findings but did not press the

alleged constitutional issues set forth in their amended complaint.

The Chancery Division expressly recognized that the written agreements signed by the plaintiffs and Mr. Sapienza did not "contain any promise that there would be no public hearings." Despite this it made the following finding on the basis of its view of the totality of the circumstance: "there was an agreement made by Mr. Sapienza for and on behalf of the Commission and, in part, in the presence of the Commission, the nature of which was to promise to the plaintiffs confidentiality insofar as the Commission was concerned for any and all disclosures made by the plaintiffs in exchange for and in consideration of their voluntary assistance to the Commission in pursuit of the investigatory proceedings."

We are satisfied that the testimony does not support the Chancery Division's finding and accordingly now reject it. When the plaintiffs were interviewed by Mr. Sapienza they were represented by their attorney who has stated that he knew that the Commission conducted public as well as private hearings and who undoubtedly was aware that if his clients were given immunity they would have no choice but to testify. For the protection of his clients he sought immunity and obtained written agreements that if immunity was not forthcoming their statements during the interviews would be held in confidence. Immunity was forthcoming and any confidentiality by virtue of the agreements was clearly removed. There were oral statements by Mr. Sapienza but the plaintiffs did not testify that they included any discussion about public hearings. Apparently the plaintiffs' position is that Mr. Sapienza made general assurances of confidentiality which led them to believe that their names would "not surface" except when necessary in connection with the criminal prosecution of others. But whatever general assurances there may have been by Mr. Sapienza in connection with his investigatory activities, it is evident to us from the testimony that at no time was there ever any promise by

the Commission or on its behalf that the Commission would not call for public hearing if it ultimately considered such course necessary or appropriate in the discharge of its statutory responsibilities. See *N. J. S. A.* 52:9M–11, 12.

█ It would indeed have been extraordinary for Mr. Sapienza to have promised the plaintiffs that they would never be called to testify at a public hearing. He had no authority to make such a promise and repeatedly denied having made it. Apart from the immunity which was expressly to be sought from and was actually granted by the Commission itself, there was nothing in the testimony on the plaintiffs' behalf to suggest that Mr. Sapienza ever spoke to them in terms of binding the Commission with respect to the future courses available to it. Thus Mr. John Cali did not testify that Mr. Sapienza had promised that the Commission would not call for a public hearing or that the Commission would keep the names confidential; all he testified to was that Mr. Sapienza said he "would do everything in his power to keep our names from public notice, and that even if it came to prosecution, he would make every effort also in that instance to keep us from coming to light." Mr. Sapienza testified that his statements of confidentiality related to his own investigatory activities but, in any event, for all that appears Mr. Sapienza has in fact done everything in his power to keep the names from becoming public. He has no more legal control over the Commission's action in calling for the public hearing under its statutory powers than he has over the prosecutor's action in pursuing criminal prosecutions under his statutory powers; in either event pertinent testimony by the plaintiffs may, in the public interest, fairly be called for and become public without infringing on legal rights of the plaintiffs or entailing unconscionable or inequitable conduct as asserted in the Chancery Division complaint. See *N. J. S. A.* 52:9M–11, 12; *Zicarelli, supra,* 55 *N. J.* at 261; *Hannah v. Larche,* 363 *U. S.* 420, 443–449, 80 S. Ct. 1502, 4 *L. Ed. 2d* 1307, 1322–1325 (1960); *cf. Jenkins v.*

*McKeithen,* 395 *U. S.* 411, 427, 89 S. Ct. 1843, 23 *L. Ed. 2d* 404, 420 (1969).

■ ■ At the oral argument before us counsel for the plaintiffs was advised that if they wished to press any of their alleged constitutional issues they could do so by filing a supplemental brief. They have filed such supplemental brief which advances, as its only point, the contention that "The Supreme Court has the right to impose restrictions upon the activities of the Commission; specifically, it can and should prevent the publicizing of the names of third persons claimed to be involved in criminal activity, who have not been indicted, tried and convicted." We may assume that, on a proper showing, this Court has adequate jurisdiction to impose restrictions on Commission proceedings. See *Sanders v. McClellan,* 150 U. S. App. D. C. 58, 463 *F. 2d* 894, 897–899 (*D. C. Cir.* 1972) ; *Davis v. Ichord,* 143 U. S. App. D. C. 183, 442 *F. 2d* 1207, 1213–1216 (D. C. Cir. 1970) ; *Liveright v. Joint Committee of Gen. Assem. of State of Tenn.,* 279 *F. Supp.* 205, 214–219 (*D. Tenn.* 1968) ; *Goldman v. Olson,* 286 *F. Supp.* 35, 48–49 (*D. Wis.* 1968) ; *cf. Doe v. McMillan,* 412 *U. S.* 306, 93 S. Ct. 2018, 36 *L. Ed. 2d* 912 (1973) ; *Watkins v. United States,* 354 *U. S.* 178, 77 S. Ct. 1173, 16 *L. Ed. 2d* 1273 (1957) ; see also *Morss v. Forbes,* 24 *N. J.* 341 (1957) ; *Eggers v. Kenny,* 15 *N. J.* 107 (1954) ; *cf. Monks v. N. J. State Parole Board,* 58 *N. J.* 238, 240–249 (1971) ; *In re Senior Appeals Examiners,* 60 *N. J.* 356, 362–364 (1972). However, we need not go further for here the plaintiffs have made no showing calling for judicial intervention. They seek to prevent "the publicizing of the names of third persons" who, however, have been afforded some protective measures (*cf. N. J. S. A.* 52 :13E–6) and who may have no current interest in precluding disclosure at the threshold. In the circumstances we consider that the plaintiffs have no authority or standing to assert the rights of these third persons or to appear on their behalf.

The summary judgment entered in the Chancery Division is hereby:

Reversed, with direction that the complaint be dismissed.

*For reversal*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, HALL, MOUNTAIN and SULLIVAN—6.

*For affirmance*—None.