FIRST JERSEY SECURITIES, INC., Robert E. Brennan, Anthony Nadino, Robert Santo, John E. Dell, and Peter J. Aiello, Plaintiffs,

v.

The SECURITIES AND EXCHANGE COMMISSION and David J. Markun, Defendants.

Civ. A. No. 82–3210.

United States District Court, D. New Jersey.

Dec. 13, 1982.

Robinson, Wayne, Levin, Riccio & LaSala by Donald A. Robinson, Newark, N.J., for plaintiffs.

Mary Anne Trump Desmond, First Asst. U.S. Atty., Newark, N.J., Anne C. Flannery, S.E.C., New York City, Linda D. Fienberg, Richard M. Humes, Douglas J. Scheidt, Harry J. Weiss, Robert Michael Duffey, Laura R. Singer, S.E.C., Washington, D.C., for defendants.

## OPINION

SAROKIN, District Judge.

Plaintiff First Jersey Securities, Inc. and several individual plaintiffs filed this complaint alleging various constitutional and statutory violations arising primarily out of two incidents.

The first incident is the undisputed disappearance of some of plaintiffs' files from an S.E.C. hearing room in New York. The files were left in the hearing room by the plaintiffs after hearings in an action to determine whether plaintiffs had violated security laws, (hereinafter the administrative proceeding), adjourned in October of 1980. In December 1980 it was discovered that the files were no longer in the hearing room. On September 15, 1982, there was a meeting between S.E.C. personnel and plaintiffs' counsel to discuss the missing files. These are the only undisputed facts; the remainder of the facts are in substantial dispute. Plaintiffs claim that their files were stored in the hearing room with the permission of the S.E.C. and with assurances that they would be safe. Plaintiffs allege misrepresentations by S.E.C. personnel regarding the missing files. Defendant claims that, while the S.E.C. did not object when plaintiffs' files were left in the room, no assurances were given for their safety. Defendant claims that S.E.C. personnel

took responsible actions upon learning of the missing files. Plaintiffs also claim that these files contained documents relevant to an unrelated S.E.C. investigation. (Geosearch).

Since the initiation of this action thorough searches have been conducted for the files, but they have not been located. Defendant concedes that it is unlikely that the files will be located. As a result of this incident, plaintiffs claim violations of due process, the Administrative Procedure Act, S.E.C. Rules and Regulations, the Records Management by Federal Agency Act and Disposal of Records Act, and claims based on breach of contract, trespass and negligence.

The second incident involves the admission on June 30, 1980, by the Administrative Law Judge handling the administrative proceeding, that someone in the agency had abstracted (or clipped) newspaper articles relating to S.E.C. matters and circulated them to personnel, including himself. In July of 1980 the ALJ refused to issue subpoenas to himself and the Secretary of the S.E.C. to produce these materials; also in July of 1980 the ALJ denied plaintiffs' motion that he disqualify himself. On September 30, 1980, the S.E.C. affirmed these actions. Plaintiffs label these documents *ex parte* communications and allege resulting violations of due process, the APA and S.E.C. Rules and Regulations. Plaintiffs also seek mandamus of the S.E.C. to issue the subpoenas and an evidentiary hearing in this court on the content of these communications. Defendant does not concede that these are *ex parte* communications.

On September 22, 1982, plaintiffs filed an emergent motion for an adjournment of the administrative proceeding. This court issued temporary restraints on September 25, preventing any agency action, including action on that motion. On October 22 the parties entered into an agreement that contained voluntary restraints on the S.E.C. proceedings, but allowed the agency to consider the emergent motion for adjournment. These voluntary restraints were to expire on December 8. On October 27 the En-

forcement Division of the agency responded to the emergent motion by arguing that it was improperly addressed to the Commission rather than to the Administrative Law Judge who was hearing the matter. At the request of plaintiffs, an extension of time to file reply papers was granted, until November 12. The reply papers of plaintiff were filed on November 15. The agency has not yet ruled on the emergent motion.

At oral argument on December 3, the court was informed that the S.E.C. had determined, on December 1, to file an enforcement action in a district court against plaintiffs herein relating to the *Geosearch* matter. This decision resulted from the *Geosearch* investigation. The government represented to the court that it intended to file this action immediately upon the expiration of the voluntary restraints. At the conclusion of the hearing the parties agreed to extend the restraints until 4:00 p.m. on December 13, in order to afford the court time to prepare an opinion based upon this late development.

The current application before the court by plaintiffs seeks:

(1) an order to show cause as to why an injunction should not be entered restraining further prosecution of the S.E.C. proceedings against plaintiffs;

(2) injunctive relief staying the administrative proceedings against plaintiffs in the S.E.C., and restraining the S.E.C. from prosecuting any matters against plaintiffs in any forum until not less than 120 days after plaintiffs' files are recovered and returned to them;

(3) an order to defendants to disclose and place on the administrative record all news abstracts and other materials supplied to the ALJ on an *ex parte* basis;

(4) an evidentiary hearing after disclosure of the *ex parte* communications and upon return of plaintiffs' files on the effect of the communications.

The S.E.C. opposes this application and has also filed a motion to dismiss the complaint for lack of subject matter jurisdiction and because the matter is not ripe.

Defendant contends that this court lacks subject matter jurisdiction over this action because of the doctrine of exhaustion of administrative remedies. Defendant argues that plaintiffs are participating in an administrative proceeding before the S.E.C. in which all of the issues raised in this court can be heard and determined and all of the relief sought in this court can be obtained, and that full judicial review of any adverse determinations can be obtained before plaintiffs would suffer any irreparable injury. The S.E.C. further argues that none of the recognized exceptions to the exhaustion doctrine are applicable to this case. As to the *Geosearch* matter, the government argues that plaintiffs will have the opportunity to present all of their arguments and defenses to the district court which will hear the enforcement proceeding.

Plaintiffs argue that the exhaustion doctrine does not deprive the court of jurisdiction to hear this case. They argue that the doctrine is discretionary and affects only the timing of judicial action. Plaintiffs further argue that three recognized exceptions to the doctrine apply in this case. They argue that the court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 (the federal question jurisdiction of this court); 28 U.S.C. § 1337 (actions concerning commerce and antitrust); 28 U.S.C. § 1361 (actions to compel an officer of the United States to perform a duty); 15 U.S.C. § 78aa (jurisdiction over violations of the Securities Exchange Act of 1934); and 15 U.S.C. § 77v(a) (jurisdiction over violations of the Securities Act of 1933).

*The administrative proceeding and the alleged ex parte communications.*

■ The doctrine of exhaustion of administrative remedies is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." (footnote omitted). *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–1, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). The primary purpose of the doctrine is to avoid premature interruption of the administrative process. *First Jersey Securities, Inc. v. Bergen,* 605 F.2d 690, 695 (3d Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). The doctrine allows the agency to use its expertise and discretion, to correct its own error and discourages piecemeal appeals of agency actions. *Id.* In some cases application of the doctrine does not affect the jurisdiction of the court, but merely alters the timing of judicial action. *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor,* 619 F.2d 231 (3d Cir.1980), *cert. denied,* 449 U.S. 1096, 101 S.Ct. 893, 66 L.Ed.2d 824 (1981). In other cases the doctrine operates to deprive the court of subject matter jurisdiction. *First Jersey Securities, Inc.,* 605 F.2d at 700.

In *First Jersey Securities, Inc. v. Bergen,* the court of appeals of this circuit held that the district court lacked the jurisdiction to entertain a suit to enjoin the National Association of Securities Dealers, Inc. from proceeding with a disciplinary hearing pursuant to authority granted by the Maloney Act, 15 U.S.C. § 78o–3. NASD is a voluntary association that provides self-regulation of the over-the-counter securities market. There are elaborate procedures for review of NASD action, including *de novo* review in the S.E.C. and review of final orders by the Court of Appeals. 15 U.S.C. § 78y(a)(1) (1976). The court recognized that the statutory system of review does not explicitly preclude a party from seeking relief in a federal district court; "(y)et the comprehensiveness of the review procedure suggests that the doctrine of exhaustion of remedies should be applied to prevent circumvention of the established procedures." 690 F.2d at 695. The court rejected the arguments that jurisdiction was established by 28 U.S.C. § 1331 or 15 U.S.C. § 78aa. The court indicated clearly that application of the exhaustion doctrine to the statutory review procedures operated to remove jurisdiction from the district court, and not merely to affect the timing of judicial action.

■ *First Jersey Securities, Inc.* controls this case and mandates dismissal of the

claims involving the administrative proceeding and the alleged *ex parte* communications. The S.E.C. proceeding involved here is subject to the statutory review procedures with review of final agency orders available in the Court of Appeals. 15 U.S.C. § 78y(a)(1) (1976). The general jurisdictional statutes, and the statutes granting limited jurisdiction in district courts over securities laws violations do not give this court jurisdiction over these claims. The lesson of *First Jersey Securities, Inc.* is that the procedures established for review of S.E.C. actions deprive this court of jurisdiction over suits that seek to interrupt the agency proceedings. Plaintiffs attempt to distinguish that case factually from this case, but the factual differences do not alter the legal conclusion that the exhaustion doctrine deprives this court of subject matter jurisdiction.

The policies behind the exhaustion doctrine are served by application of the doctrine in this case. The agency has been presented with plaintiffs' concerns about the missing files and is currently determining whether to proceed. The agency may decide to halt the administrative proceedings, thereby mooting all of the claims raised by plaintiffs in this court. If the agency determines to continue the proceeding, some accommodation may be reached to minimize any disadvantage to plaintiffs from the loss of the files. The claims involving the alleged *ex parte* communications have been determined by the agency and will be open to review by the Court of Appeals, if and when a final order is issued. The *ex parte* communications may play no role in the final determination. Furthermore, agency determination of these issues will develop a factual record that will aid the court on review. The claims involving the missing files especially need such a factual record, for the facts of that event are either hotly disputed or unknown.

The exhaustion doctrine is subject to several well-recognized exceptions. *First Jersey Securities, Inc.,* 605 F.2d at 696. Plaintiffs contend that three such exceptions apply in this case.

Plaintiffs first contend that they have alleged clear and unambiguous statutory and constitutional violations of their rights. There is a narrow exception to the exhaustion doctrine when such violations are demonstrated, 605 F.2d at 696, but plaintiffs' allegations do not present any clear and unambiguous violations. The injury alleged to result from the disappearance of the files is the inability to adequately defend the administrative proceeding. The agency has not determined that this proceeding will go forward; in fact, the agency is now considering plaintiffs' emergent motion for an adjournment. Because plaintiffs have not been required to proceed without their files, the violation they allege has not occurred. The injuries alleged to have occurred through the S.E.C. orders regarding the news articles alleged to be *ex parte* communications also have not yet occurred, for no sanctions have been imposed by the agency. *First Jersey Securities, Inc.,* 605 F.2d at 700. In that case, the court also stated that claims of agency bias are particularly appropriate for application of the exhaustion doctrine. *Id.* at 699.

Plaintiffs argue that a second exception to the exhaustion doctrine applies because agency procedures are inadequate to prevent irreparable injury. Plaintiffs again rely on injury that *may* occur if they are forced to defend themselves without their files. Such injury clearly has not yet occurred and agency procedures have not been shown to be inadequate to prevent the injury. The agency is considering plaintiffs' emergent motion for adjournment, and plaintiffs have not specifically demonstrated why this procedure is inadequate. Plaintiffs claim that the procedures will be flawed because the administrative law judge must be disqualified from deciding the matter, either because he will or should be a witness, or because he is an employee of the S.E.C. The question of potential disqualification is one to be presented to the agency first. As noted above, the exhaustion requirement is particularly appropriate when claims of bias are presented. *First Jersey Securities, Inc.,* 605 F.2d at 699. As to the claims about the alleged *ex parte*

communications, there has been no irreparable injury because no agency action has been taken. In *First Jersey Securities, Inc.* the court rejected the argument that irreparable injury could result from the threat of sanctions. 605 F.2d at 697. This court also observes that the agency order regarding these communications was issued over two years ago and no explanation is offered of the immediacy of any injury now. If final agency action is taken, plaintiffs may challenge the order in the Court of Appeals.

Finally, plaintiffs contend that an exception to the exhaustion doctrine applies because further exhaustion would be futile "where the agency's intentions are clear and will be carried out in a way which will violate plaintiffs' rights." (Plaintiffs' reply brief at 54). Plaintiffs contend that the agency's decision to file the enforcement action in the *Geosearch* matter, after plaintiffs presented their lost files claims to the agency, is, in effect, a denial of the motion to adjourn the administrative proceeding. However, the agency's intentions as to the motion for an adjournment are by no means clear. The decision to initiate the enforcement action in the *Geosearch* matter is not an implied rejection of plaintiffs' lost files claim as it relates to the administrative proceeding now in progress. The agency may have determined that the harm from the lost files to the *Geosearch* defense was minimal, or that the plaintiffs could sufficiently raise the claim in the district court where the enforcement action is brought. The administrative proceeding is factually different from the *Geosearch* matter, and the files involved are different. A judgment made as to the harm to the defense of the *Geosearch* enforcement action would not imply an identical judgment as to the harm to the defense of the administrative proceeding. Although its position as to the alleged *ex parte* communications is clear, no injury has yet occurred because there has been no final agency action. Exhaustion of administrative remedies on both of these claims will not be futile.

Because the exhaustion doctrine applies to this case, and none of the exceptions to the doctrine applies, plaintiffs are required to exhaust their administrative remedies on the claims involving the administrative proceeding and the alleged *ex parte* communications. This court lacks jurisdiction to determine these claims.

*Gulf Oil Corp. v. United States Department of Energy,* 663 F.2d 296 (D.D.C.1981), relied on by plaintiffs, does not support a contrary result. In that case there were serious allegations of agency destruction of documents vital to the matter and of prohibited *ex parte* communications including agency memoranda, supported by admissions of agency personnel. *Id.* at 313. Although the district court order was vacated due to changed circumstances, the circuit court approved of the district court's failure to require exhaustion when the sole purpose of that court's order was the preservation of an adequate administrative record. *Id.* at 305. Nothing before the court in this case indicates that any action is necessary to assure preservation of an adequate record. Normal agency procedures should be adequate here to preserve an adequate record of the agency proceedings. In fact, this court's opinion on that issue assures the creation of and preservation of such a record.

*Ripeness*

■ As an alternate ground for dismissal, defendant relies upon the doctrine of ripeness. The court discerns little difference between this doctrine and that of exhaustion. Much of the same analysis and many of the same conclusions are applicable. A motion to dismiss may be granted when a party seeks to challenge agency action that is found to present a controversy that is not ripe for judicial review. *Toilet Goods Association, Inc. v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967). The ripeness doctrine is summarized in *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–9, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of prema-

ture adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. (footnote omitted).

■ The claims raised regarding the missing files are not fit for judicial review at this time. They are not purely legal issues. See *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515. Plaintiffs acknowledge that significant factual development is necessary before the legal issues can be reached, but argue that this court is the proper forum to determine the facts. Factual development is more appropriate in the agency proceedings, and plaintiffs have not demonstrated any reason to doubt the adequacy of the agency proceedings to develop the facts. In addition, no final agency action has been taken because plaintiffs have not been required to proceed without their files. The agency's position on the motion for adjournment is not known.

There is also insufficient hardship to the plaintiffs from the withholding of judicial review at this time. No final agency action has been taken, and no sanctions have been imposed. The impact of the agency actions is not "sufficiently direct and immediate as to render the issue appropriate for judicial review." 387 U.S. at 152, 87 S.Ct. at 1517.

Since the claims are not ripe, plaintiffs have failed to state a claim upon which relief can be granted.

*The Geosearch Enforcement Action*

■ As to the Geosearch matter, there are essentially no further agency procedures to be exhausted by plaintiffs at this time. The enforcement action will be filed in the district court and the remedies that plaintiffs can pursue therein are judicial remedies. The exhaustion doctrine therefore does not apply to deprive this court of subject matter jurisdiction. However, the court finds that plaintiffs have an adequate remedy at law to challenge any alleged deprivations of rights in the *Geosearch* matter, and thus these claims are dismissed for lack of equity jurisdiction to enjoin the filing of the enforcement action. *Reisman v. Caplin,* 375 U.S. 440, 443, 84 S.Ct. 508, 510, 11 L.Ed.2d 459 (1964); *Peoples Bank of Danville v. Williams,* 449 F.Supp. 254, 261 (W.D.Va.1978). The injury alleged by plaintiffs is an inability to defend the action without their files. Until the enforcement action is commenced the injury is speculative. The S.E.C. represented to this court that the action will be commenced immediately upon the expiration of the voluntary restraints. Plaintiffs' arguments can then be presented to the district court where the enforcement action is filed and can be fully litigated there.

■ Nevertheless, plaintiffs ask this court to maintain jurisdiction over the case and to enjoin the S.E.C. from filing any enforcement action. Plaintiffs argue that they will be harmed by the filing of the enforcement action in two ways. Plaintiffs contend that they will be harmed by a multiplicity of suits by having to present their lost files argument in two forums. If this court declines to exercise its jurisdiction, only the court hearing the enforcement action will hear plaintiffs' claims. Multiplicity of suits can be avoided by this court declining jurisdiction rather than by this court enjoining the S.E.C. from filing in another court. There have been no factual hearings in this court, so there will be no duplication of effort, if plaintiffs must present their claim to the court hearing the enforcement action.

Plaintiffs also claim that they will be harmed by the publicity generated by the filing of the complaint. The court recognizes that there may be adverse publicity upon filing of the S.E.C. complaint, but this is not a sufficient reason for this court to maintain jurisdiction and enjoin the filing of the complaint. Plaintiffs' argument is, in effect, that because they have a good defense to the enforcement action (the lost

files), the S.E.C. will not be successful; and since the agency will not ultimately succeed, the court should intervene now to stop adverse publicity. Analogizing this situation to one where a criminal indictment is filed, if this argument is correct, every person who is threatened with criminal indictment would be able to enjoin the grand jury from issuing the indictment simply because that person had a good defense to the crime charged. Adverse publicity often accompanies the filing of indictments, yet persons accused of crimes are required to present their valid defenses at trial. Generally, the "expense and annoyance" of litigation does not constitute irreparable injury. *Federal Trade Commission v. Standard Oil Co. of California,* 449 U.S. 232, 244, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980). Adverse publicity may be an unfortunate consequence of the enforcement action, if plaintiffs herein succeed in dismissing such action, but such publicity does not warrant the issuance of an injunction against such proceedings.

The court also notes that plaintiffs subjected themselves to the possibility of adverse publicity when they filed this action. A lengthy oral argument was held on December 3, at which time the S.E.C. announced its intention to file the enforcement action. A substantial amount of argument was generated from both sides about the legal and practical effects of this decision. Members of the press were free to attend this hearing and to report about it. At least one newspaper article was published that reported the content of the hearing.[1] Plaintiffs did not express fear of injury from publicity generated by that hearing, and no motion was made to seal the courtroom. The possibility of adverse publicity to plaintiffs about the *Geosearch* investigation has been present since the filing of the plaintiffs' complaint in this court.

The claims of plaintiffs of injury because of inability to defend the *Geosearch* enforcement action are also not ripe for adjudication in this forum at this time. The issues are not purely legal, for extensive factual development is necessary to determine what harm, if any, will occur if plaintiffs must defend without their files. Factual findings as to the content of the missing files and the circumstances of their disappearance may be necessary. The court will need to know the exact allegations in the complaint in order to determine whether plaintiffs have been harmed, and if any harm can be minimized. This court is not in a position to make this detailed analysis of harm because it does not have the anticipated complaint before it.

Because plaintiffs have an adequate remedy at law, this court lacks jurisdiction to issue the requested injunction. The claims relating to the *Geosearch* are dismissed without prejudice.

*Conclusion*

Plaintiffs contend that by virtue of the loss of their records and documents they have been deprived of the right and ability to defend themselves. They urge that both administrative and court proceedings pending or contemplated should be enjoined because they have established or can establish that said records and documents were lost by government action or negligence.

As to the pending administrative proceedings there has been no determination as to whether they will proceed, and if so, under what conditions. Whether or not plaintiffs will be harmed by the loss of said files has not yet been determined. At a minimum the administrative agency should be permitted to develop a record regarding the circumstances surrounding the loss of the files and reach a determination respecting same.

As to the contemplated enforcement proceeding involving *Geosearch,* simply stated, whatever plaintiffs could assert in this proceeding, can be asserted in the enforcement proceeding. The fact that plaintiffs have or may have a valid defense to that proceeding is not a proper basis for enjoining its initiation. The validity of the defense is better determined as measured against the actual charges rather than in a vacuum. The loss of the files may require a total dismissal or some less drastic remedy which can be fashioned by the court dealing with

1. Auerbach, SEC to File Case Against First Jersey, Wash. Post, December 4, 1982, at G9.

the actual rather than the potential complaint.

The court is not unmindful of the harm which may be caused by the publicity incident to the filing of a complaint by the S.E.C. However, such adverse publicity is an unfortunate by-product of every such action, but it does not warrant judicial intervention on the ground that such action can be successfully defended. An action brought in good faith cannot be enjoined solely on the ground that the defendant named therein will ultimately succeed. That argument is more properly addressed in a motion to dismiss an action rather than one to enjoin its commencement.

For the foregoing reasons, the complaint filed herein shall be dismissed. Counsel for the defendant is directed to submit an appropriate order to the court in accordance with this Opinion.