IN THE MATTER OF A RESOLUTION OF THE STATE
COMMISSION OF INVESTIGATION, ADOPTED JUNE
4, 1982, AND PROCEEDINGS THEREON.

Argued March 31, 1987—Decided July 8, 1987.

*James J. Morley,* Executive Director, argued the cause for appellant New Jersey State Commission of Investigation (*Carol L. Hoekje,* Counsel, attorney).

*William J. Wolf* argued the cause for respondents (*Bathgate, Wegener, Wouters & Newman,* attorneys; *William J. Wolf* and *William W. Robertson,* of counsel; *William J. Wolf* and *Thomas L. Weisenbeck,* on the brief).

The opinion of the Court was delivered by

GARIBALDI, J.

In this appeal we must decide whether the plaintiffs, who are the subjects of an investigation by the State Commission of Investigation (SCI), may sue for an injunction to enforce the confidentiality obligations imposed on the SCI by *N.J.S.A.* 52:9M–15(a). The statute provides that unauthorized disclosure of information that the SCI obtains in the course of its investi-

gations is a crime. The plaintiffs contend that SCI employees have disclosed information about them in contravention of *N.J.S.A.* 52:9M–15(a); that these disclosures have interfered with their business relationships; and that an injunction is necessary to protect the plaintiffs from further unauthorized disclosures. However, in view of the statutory context of *N.J.S.A.* 52:9M–15(a) and in particular *N.J.S.A.* 52:9M–8, which anticipates that the Attorney General will control the unauthorized disclosure of information obtained in the course of SCI investigations, we conclude that the equitable relief that the plaintiffs seek is neither proper nor necessary.

## I

In 1968, a Special Joint Legislative Committee to Study Crime and the System of Criminal Justice in New Jersey[1] recommended the creation of a State Commission of Investigation that would function "as a watchdog of the entire system itself and [of] special problems such as organized crime and official corruption." Report of Joint Legislative Committee to Study Crime and the System of Criminal Justice in New Jersey at 4 (1968). In response, the Legislature created the SCI. *L.* 1968, *c.* 266 (codified at *N.J.S.A.* 52:9M–1 to –19). The SCI has the "duty and power to conduct investigations in connection with," *inter alia,* the "faithful execution and effective enforcement of the laws of the State, with particular reference but not limited to organized crime and racketeering." *N.J.S.A.* 52:9M–2(a). The SCI must advise the Governor, the Legislature, and the public about the results of its investigatory activities. *See N.J.S.A.* 52:9M–4.2, –4.3, –11. *See generally Cali v. New Jersey State Comm'n of Investigation,* 63 *N.J.* 310, 312 (1973); *Zicarelli v. New Jersey State Comm'n of Investigation,* 55

---

[1] This Special Joint Legislative Committee to Study Crime and the System of Criminal Justice in New Jersey was established in 1968 by a resolution of the Senate in which the General Assembly concurred. S.Con.Res. 44 (Mar. 11, 1968).

*N.J.* 249, 261 (1970), aff'd, 406 *U.S.* 472, 92 *S.Ct.* 1670, 32 *L.Ed.* 2d 234 (1972) (noting that the SCI was created "to discover and to publicize the state of affairs in the criminal area, to the end that helpful legislation may be proposed and receive needed public support").

The SCI also must advise its witnesses about the nature and scope of the investigations pursuant to which they are called. "A witness before the Commission is entitled to have in advance of his testimony a statement of the subject matter on which the Commission intends to examine him. This advance notice of the subject of the inquiry will provide a background and context that will aid a witness in determining what information the questions seek." *Zicarelli, supra,* 406 *U.S.* at 477, 92 *S.Ct.* at 1674, 32 *L.Ed.*2d at 239 (footnote omitted); *see N.J.S.A.* 52:9M–12(a) (requiring SCI to furnish all witnesses with a general statement of the subject of the investigation and to comply whenever a witness requests a copy of the resolution or other provision of law authorizing the investigation); *see also In re Manna,* 124 *N.J.Super.* 428, 439 (App.Div.) (failure to inform witness adequately about scope of SCI inquiry would violate due process), certif. denied, 64 *N.J.* 158 (1973).

Even as the SCI has a duty to publicize the results of investigations and to advise witnesses why their testimony is sought, SCI personnel are obligated to keep the information that they learn in the course of an investigation confidential. Indeed, *N.J.S.A.* 52:9M–15(a) makes it a crime to "disclose other than as authorized or required by law, to any person other than the commission or an officer having the power to appoint one or more of the commissioners,[2] the name of any witness examined, or any information obtained [in the course of an SCI investigation], except as directed by the Governor or Commission...."[3]

---

[2]The Commission consists of four members. Two are appointed by the Governor, one by the President of the Senate, and one by the Speaker of the General Assembly. *N.J.S.A.* 52:9M–1.

[3]*N.J.S.A.* 52:9M–15(a) reads:

The plaintiffs contend that employees of the SCI have breached their statutory duty of confidentiality. Their complaint alleges that the SCI has wrongfully informed many of their business associates that the plaintiffs are the subject of an investigation into organized crime and racketeering in the garment trucking and garment warehousing industries in New Jersey. Specifically, the complaint alleges that the SCI has gratuitously incorporated the language of the Resolution that established the investigation at issue here into the subpoenas that it has served—both within New Jersey and out-of-State [4]—on the plaintiffs' accountants, suppliers, customers, and employers. That Resolution explains that the SCI is investigating "organized crime and racketeering" in the garment warehousing and garment trucking industries. Plaintiffs contend that the reference to organized crime in the subpoenas is unnecessary, unfair, and harmful to their business.

The complaint also alleges that SCI agents have suggested to several of the plaintiffs' out-of-state business associates that

a. Any person conducting or participating in any examination or investigation who shall disclose or any person who, coming into possession of or knowledge of the substance of any examination or investigation, shall disclose, or any person who shall cause, encourage or induce a person, including any witness or informant, to disclose, other than as authorized or required by law, to any person other than the commission or an officer having the power to appoint one or more of the commissioners the name of any witness examined, or any information obtained or given upon such examination or investigation, except as directed by the Governor or commission; or any person other than a member or employee of the commission or any person entitled to assert a legal privilege who, coming into possession of or knowledge of the substance of any pending examination or investigation who fails to advise the Attorney General and the commission of such possession or knowledge and to deliver to the Attorney General and the commission any documents or materials containing such information, shall be guilty ... of a crime of the third degree. Any member or employee of the commission who shall violate this section shall be dismissed from his office or discharged from his employment.

[4] Because it is not essential to our holding, we do not determine the plaintiffs' claim that the SCI exceeded its investigatory jurisdiction by pursuing out-of-state leads.

the plaintiffs are guilty of particularized instances of dishonorable behavior and possible criminal infractions; and that SCI agents have gratuitously discussed the investigation with an out-of-state politician and with representatives of a nationally circulated trade newspaper. The trade paper published a report that the SCI was investigating the plaintiffs' "alleged relationships to organized crime."

The plaintiffs sought in Count Four of their complaint[5] a declaratory judgment that the SCI has been engaging in conduct that is proscribed by *N.J.S.A.* 52:9M–15(a) and an injunction to restrain the SCI from violating the statute in the future. The trial court denied SCI's motion to dismiss the complaint for failure to state a claim, or, in the alternative, for summary judgment. The Appellate Division affirmed. The SCI then moved before this court for leave to appeal, which we granted. 107 *N.J.* 92 (1987). We now conclude that the plaintiffs do not have a right to sue under *N.J.S.A.* 52:9M–15(a). Thus their request for an injunction to enforce that statute is not cognizable. Moreover, we believe that a declaratory judgment in this case would be inappropriate.

## II

As explained above, *N.J.S.A.* 52:9M–15(a) provides that anyone conducting or participating in an SCI investigation who wrongfully discloses information obtained in the course of that investigation is guilty of a crime. It also provides that any member or employee of the commission who violates his duty of confidentiality "shall be dismissed from his office or discharged from his employment." The text of the statute does not provide for a private right of action for persons who may be harmed by violations of it.

Plaintiffs contend that they are entitled to such a right of action even though there is no statutory language that would

---

[5]The remaining counts of the complaint are not at issue in this appeal.

expressly sanction it. In arriving at our decision that these plaintiffs have no implicit private cause of action, we have analyzed factors that the United States Supreme Court has established for testing federal rights of action. *See Cort v. Ash*, 422 *U.S.* 66, 95 *S.Ct.* 2080, 45 *L.Ed.*2d 26 (1975); *see also Merrell Dow Pharmaceuticals, Inc. v. Thompson*, —— *U.S.* ——, —— & nn. 7 & 8, 106 *S.Ct.* 3229, 3234 & nn. 7 & 8, 92 *L.Ed.*2d 650, 660 & nn. 7 & 8 (1986) (reaffirming the *Cort* framework); *Jalowiecki v. Leuc*, 182 *N.J.Super.* 22, 29 (App. Div.1981) (following *Cort* ) (determining that no private right of action could be implied from *N.J.A.C.* 7:9–2.22, which set standards for sewerage disposal systems). Thus we have considered whether the plaintiff is "one of the class for whose *especial* benefit the statute was enacted," *Cort, supra,* 422 *U.S.* at 78, 95 *S.Ct.* at 2088, 45 *L.Ed.*2d at 36; whether there is any evidence that the Legislature intended to create a private cause of action under the statute, *id.;* and whether implication of a private cause of action in this case would be "consistent with the underlying purposes of the legislative scheme." *Id.* These considerations militate against our recognition of the plaintiffs' cause of action.

■ In *Cort,* the Supreme Court noted that it would be the unusual case where "a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone" could be construed as being intended primarily to benefit a certain group of plaintiffs. 422 *U.S.* at 80, 95 *S.Ct.* at 2089, 45 *L.Ed.*2d at 37. We agree. New Jersey courts generally will not allow private plaintiffs to sue for injunctions to enforce the state penal laws. *See Trisolini v. Meltsner,* 23 *N.J.Super.* 204, 208–09 (App.Div.1952); *Egg Harbor v. Colasuonno,* 182 *N.J.Super.* 110, 113 (Ch.Div.1981); *Inganamort v. Merker,* 148 *N.J.Super.* 506, 508 (Ch.Div.1977); *Kugler v. Romain,* 110 *N.J.Super.* 470, 488 (Ch.Div.1970), modified by 58 *N.J.* 522 (1971). Violations of these laws "are left to the agencies charged with the enforcement of the criminal laws." *Trisolini, supra,* 23 *N.J.Super.* at 209.

Of course, we do not foreclose the possibility that a private right of action could be implied from a penal law. *See Cort, supra,* 422 *U.S.* at 80, 95 *S.Ct.* at 2089, 45 *L.Ed.*2d at 37. But there is no evidence that the Legislature enacted *N.J.S.A.* 52:9M–15 to protect the targets of SCI investigations or that it anticipated that private plaintiffs might sue to enforce the confidentiality provisions of *N.J.S.A.* 52:9M–15(a).

The only legislative history of *L.* 1968, *c.* 266 (codified at *N.J.S.A.* 52:9M–1 to –19) is the Report of the Joint Legislative Committee to Study Crime and the System of Criminal Justice in New Jersey (1968). The Joint Committee introduced its Report along with a draft of the bill that was enacted to establish the SCI. Legislative Notes on *R.S.* 52:9M–1 to –19 (1970). The Report does not discuss confidentiality or private causes of action, and the Committee's bill was enacted without amendment. Consequently, we have only the statutory context to inform us about the legislative intentions behind the confidentiality provisions of *N.J.S.A.* 52:9M–15(a).

When it is read in context, the provision for nondisclosure under which the plaintiffs claim a right to sue seems designed to protect the SCI investigation itself, rather than its potential targets. *N.J.S.A.* 52:9M–15(a) gives the Governor and/or the Commission unqualified power to authorize or direct disclosure of otherwise confidential information. We do not believe that the Legislature would have thus delegated the right to waive the protections afforded by the statute if they were intended for the benefit of the targets of SCI investigations. Moreover, the two other paragraphs within *N.J.S.A.* 52:9M–15 both prefer the efficacy of the investigatory process over sensitivity to the individuals who might be embarrassed by it. *See N.J.S.A.* 52:9M–15(b) (statements made by members or employees of the SCI during the course of or relevant to investigatory activities are absolutely privileged); *N.J.S.A.* 52:9M–15(c) (explaining that the confidentiality provisions of the statute should not impinge on the SCI's reporting on its activities to the Governor, Legislature and public).

˙We also take cognizance of the fact that under *N.J.S.A.* 52:9M–15(a) not only the information obtained in the course of an investigation but also the names of witnesses who testify must be kept confidential. We note that the targets of an investigation would not be harmed by the disclosure of the names of witnesses. But the State's interest in the undisturbed functioning of the SCI would justify this provision for secrecy.

The State's interest in the secrecy of SCI investigations is manifestly analogous to the State's interest in Grand Jury secrecy. In *State v. Doliner,* 96 *N.J.* 236 (1984), we considered the reasons why the secrecy of Grand Jury proceedings is guarded. We believe that the same principles underlie the statutory provision for confidentiality in SCI investigations, *viz.:*

> (1) To prevent the escape of those whose indictment [6] may be contemplated; (2) to insure the utmost freedom ... in ... deliberations, and to prevent persons subject to indictment or their friends from importuning [those who are engaged in deliberations] ...; (3) to prevent subornation of perjury or tampering with the witnesses who may testify [both at the investigatory stage and later during a prosecution]; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation.... [*Doliner, supra,* 96 *N.J.* at 247 (quoting *United States v. Proctor & Gamble,* 356 *U.S.* 677 at 681 n. 6, 78 *S.Ct.* 983 at 986 n. 6, 2 *L.Ed.* 2d 1077 at 1081 n. 6).]

Accordingly, we acknowledge that the protection of innocent parties under investigation is probably one of the reasons that confidentiality in SCI investigations is important. But we conclude in this context that the State's interest in the unobstructed functioning of the SCI is of overwhelming primacy. Hence, we do not infer any legislative intention that the confidentiality obligations established in *N.J.S.A.* 52:9M–15(a) be enforced through the private litigation of parties under investigation.

---

[6]Although SCI investigations do not lead as directly to an indictment as Grand Jury proceedings do, nevertheless the SCI can be instrumental in a criminal prosecution. *See N.J.S.A.* 52:9M–8 (directing that SCI personnel call the Attorney General's attention to any information or evidence of a reasonable probability of criminal wrongdoing).

Nor can we believe that such litigation would be "consistent with the underlying legislative scheme." The record in this case indicates that the plaintiffs' discovery requests sought information from SCI staff members about whether and in what circumstances disclosures other than those that the plaintiffs claimed to have information about had occurred. Thus, they inquired into the substance of confidential investigatory discussions. Discovery requests like these, which are an integral part of the kinds of lawsuits that would be brought if there were an implicit right of action under *N.J.S.A.* 52:9M–15(a), would impede the secrecy and therefore the efficacy of SCI investigations.

Additionally, we cannot overlook the possibility that this inherently controversial type of discovery could be misused as a dilatory tactic by parties who seek to obstruct official proceedings. Hence we conclude that extrapolation of the implicit private cause of action that the plaintiffs propose would frustrate, rather than further, the legislative scheme that underlies *N.J.S.A.* 52:9M–15(a).

Moreover, we are impressed by the fact that the legislative scheme obviates the plaintiffs' need for a private cause of action. *N.J.S.A.* 52:9M–8 mandates that

> if the commission or any employee of the commission obtains any information or evidence indicating a reasonable possibility of an unauthorized disclosure of information ... such information or evidence shall be immediately brought by the commission to the attention of the Attorney General.

Thus the Legislature has specifically provided a mechanism to ensure that the Attorney General check violations of the duty of confidentiality imposed by *N.J.S.A.* 52:9M–15(a). In this way, the statute can be enforced without protracted and problematic civil litigation.

██ Accordingly, "the doctrine of exhaustion of remedies should be applied to prevent circumvention of the established procedures." *First Jersey Sec., Inc. v. Bergen*, 605 *F.*2d 690 at 695 (3d Cir.1979), *cert.* denied, 444 *U.S.* 1074, 100 *S.Ct.* 1020, 62 *L.Ed.*2d 756 (1980). Just as we generally require that litigants

exhaust their administrative remedies before they come to court, *see Abbott v. Burke,* 100 *N.J.* 269, 297–301 (1985), so we hold that these plaintiffs must seek relief in the first instance through the designated statutory vehicle. *Cf. First Jersey Sec., Inc. v. S.E.C.,* 553 *F.Supp.* 205, 209 (D.N.J.1982) (noting that the policies behind the exhaustion doctrine were served by that court's refusal to hear a lawsuit that would interrupt administrative review proceedings pursuant to an S.E.C. enforcement action). If after the Attorney General and the SCI conclude their consideration of this matter the plaintiffs still believe that they have not obtained relief to which they are entitled, then, of course, they may seek judicial review.

■ Plaintiffs argue that our deference to the legislative scheme established by *N.J.S.A.* 52:9M–8 is inappropriate in this case because the SCI has not fulfilled its statutory duty to refer evidence of unlawful disclosures to the Attorney General. In such a case, the injured parties may consider instituting an action in lieu of prerogative writ in the nature of mandamus [7] to secure a court order directing the SCI to inform the Attorney General about relevant evidence. *See R.* 4:69–1, –2. Thus unauthorized disclosures can be controlled without compromising the Legislature's plan to protect the efficacy of the SCI investigatory process.

Accordingly, we hold that plaintiffs may not invoke a private cause of action to sue for an injunction under *N.J.S.A.* 52:9M–15(a).

---

[7] A writ of mandamus is an order given by a court to a government official "that commands the performance of a specific ministerial act or duty, or compels the exercise of a discretionary function, but does not seek to interfere with or control the mode and manner of its exercise or to influence or direct a particular result." *Switz v. Middletown Township,* 23 *N.J.* 580, 598 (1957). Mandamus is a well-established remedy for "official inaction." *Joseph v. Passaic Hosp. Ass'n,* 26 *N.J.* 557, 571 (1958); *see Marbury v. Madison,* 5 *U.S.* (1 Cranch) 137, 169–71, 2 *L.Ed.* 60, 71 (1803). It is "never granted in anticipation of an omission of duty but only after actual default." 53 *Am.Jur.*2d, Mandamus § 5 at 334.

## III

■ In light of our holding that the plaintiffs may not obtain the injunctive relief they seek, we decline to render a declaratory judgment on whether the SCI made unlawful disclosures about the plaintiffs.

"[A] declaratory judgment, like other forms of equitable relief, 'should be granted only as a matter of judicial discretion, exercised in the public interest.' " *Proprietary Ass'n v. Board of Pharmacy*, 16 *N.J.* 62, 71 (1954) (citing *Eccles v. Peoples Bank*, 333 *U.S.* 426, 431, 68 *S.Ct.* 641, 644, 92 *L.Ed.* 784, 789 (1948)); *see Sanders v. Cuba R.R. Co.*, 21 *N.J.* 78, 87 (1956). "It is always the duty of a court of equity to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief. Especially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative." *Eccles, supra*, 333 *U.S.* at 431, 68 *S.Ct.* at 644, 92 *L.Ed.* at 789. In order to ascertain for the purposes of an action for declaratory judgment whether SCI personnel have made unlawful disclosures during the course of their investigation of the plaintiffs, protracted discovery into the nature and substance of confidential investigatory communications would be essential. As noted above, this kind of discovery would frustrate the Legislature's attempt to facilitate SCI investigations.

We would not impede such a clear public interest unless there were strong counterveiling equitable considerations in favor of the plaintiffs. No such factors are present in this case. The declaratory judgment that the plaintiffs seek was to provide a basis for fashioning injunctive relief. Thus, our decision that the plaintiffs may not obtain the injunctive relief they sought undermines their need for a declaratory judgment. *See Sanders, supra*, 21 *N.J.* at 87 (noting that "no proper purpose would be served" by rendering a declaratory judgment that would not have any practical effect) (contrasting that case with those in which a declaratory judgment is sought in connection with

injunctive proceedings). Accordingly, we conclude that the public interest in the smooth functioning of the SCI outweighs the plaintiffs' interest in a declaratory judgment. If, as the plaintiffs claim, SCI personnel have perpetrated illegalities, the Attorney General can vindicate those violations in a criminal proceeding.

For the reasons stated, the judgment of the Appellate Division is reversed, and Count Four of the complaint is dismissed.

*For reversal*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.