899 A.2d 1028

WARREN COUNTY BAR ASSOCIATION, A NON–PROFIT MEMBERSHIP CORPORATION OF THE STATE OF NEW JERSEY AND KEVIN M. HAHN, PLAINTIFFS–APPELLANTS, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF WARREN, A POLITICAL SUBDIVISION OF THE STATE OF NEW JERSEY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued Telephonically May 9, 2006—Decided June 13, 2006.

Before Judges FALL, YANNOTTI and NEWMAN.

*Lawrence P. Cohen* argued the cause for appellants (*Courter, Kobert & Cohen,* attorneys; *John J. Abromitis,* on the brief).

*Nancy C. Gage* argued the cause for respondent (*Bell & Gage,* attorneys; *Joseph J. Bell, Jr.,* and *Ms. Gage,* on the brief).

The opinion of the court was delivered by

YANNOTTI, J.A.D.

Plaintiffs Warren County Bar Association (Association) and Kevin M. Hahn, a resident and taxpayer of Warren County, commenced this action against the Warren County Board of Chosen Freeholders (Board) seeking an order requiring the Board to provide "safe, healthful and suitable courtrooms and facilities" in the County in accordance with standards that the court may deem "appropriate and necessary for the proper administration of justice." Plaintiffs appeal from an order entered on September 9, 2005 dismissing their complaint for failure to state a claim upon which relief can be granted. We affirm.

## I.

The present court facilities in Warren County were constructed in or about 1825 and were last expanded in or around 1960. Since 1960, the population of the County has grown from about 63,000 to 110,000. According to plaintiffs, the court facilities in the County are "grossly overcrowded and in a state of disrepair." Plaintiffs allege that the court facilities are "unsafe and unhealthy" and "grossly impair the ability of the judiciary, and other employees of Warren County, to perform their functions."

Plaintiffs contend that, over the years, the Board has been made aware of the "insufficiency, lack of suitability and the overcrowded and unsafe conditions" of the court facilities. In or about 2000, the Board retained the services of a consultant to evaluate the court facilities and make recommendations to ensure that the facilities were suitable and safe. According to plaintiffs, the consultants determined that the court facilities were inefficient, overcrowded and lacked adequate security and parking. The consultants issued a report dated March 20, 2002, recommending improvements to the facilities and suggested several alternatives, from expansion and renovation of the existing courthouse, to construction of a new courthouse.

Plaintiffs further allege that, at or about the same time, the Assignment Judge for the vicinage which includes Somerset,

Hunterdon and Warren Counties formed a committee to review the consultant's report and make recommendations to the Board concerning the court facilities. According to the complaint, the committee thereafter communicated its recommendations to the Board but the Board "failed to act on any recommendation and has failed to make any improvements to the Warren County Courthouse, and in particular, the judicial facilities."

Plaintiffs claim that the County's court facilities fail to provide proper security as required by the State judicial system; do not provide for the proper separation of prisoners from the general public and separation of adult prisoners from juvenile prisoners; fail to provide proper facilities where members of the Bar may consult with their clients in a manner that would protect the attorney-client privilege; and do not provide facilities where members of the Bar may consult with each other. The complaint states:

> The Board of Chosen Freeholders has pursued and continues to pursue a policy of purporting to provide proper and adequate judicial facilities, but these efforts have been makeshift, temporary and are inadequate to rectify the continuing problems as established by the County's own retained experts.

Plaintiffs assert that the maintenance and perpetuation of the present conditions constitute a "grossly improper and unlawful interference with the efficient functioning of the judiciary and other agencies" in the County. Plaintiffs allege that the Board's failure to meet its obligation under *N.J.S.A.* 2B:6–1(b) to provide "suitable" facilities for courts has placed an "undue and improper burden[ ]" upon the judiciary. Plaintiffs further allege that the Board's failure to adopt and implement plans for the construction of courtrooms and related facilities is arbitrary, capricious and unreasonable, an abuse of discretion and otherwise violates the Board's obligation "pursuant to law."

The matter was transferred to the Mercer vicinage and on August 23, 2005, the Board moved to dismiss the complaint for failure to state a claim upon which relief could be granted. *R.* 4:6–2(e). Judge Linda R. Feinberg heard argument on Septem-

ber 9, 2005 and thereafter filed an opinion and order dismissing the complaint.

In her opinion, Judge Feinberg concluded that plaintiffs could not maintain a cause of action under *N.J.S.A.* 2B:6–1(b) to compel the Board to meet its statutory obligation to provide "suitable" facilities for the courts. The judge further determined that under *R.* 1:33–4, responsibility to assess and evaluate the suitability of court facilities had been conferred upon the Assignment Judge for the respective vicinage. Moreover, under *R.* 1:33–9, disputes between the governing body of a county and the Assignment Judge "concerning the location, size, or other physical characteristics of courtrooms, chambers, office space or related facilities" must be resolved, "at the request of either party," by arbitration. Judge Feinberg concluded that an interpretation of *N.J.S.A.* 2B:6–1(b) that would allow a taxpayer or association to maintain a private right of action to enforce a county's obligation to provide "suitable" facilities for the courts would conflict with the allocation of responsibility and dispute resolution procedures mandated by the Supreme Court in the court rules.

Judge Feinberg also determined that plaintiffs' action was an action for mandamus. However, the judge determined that such relief was not a proper remedy in this case because plaintiffs were not seeking to compel specific action of a ministerial nature but were instead seeking to compel the Board to exercise its discretion.

The judge therefore dismissed the action but "strongly" encouraged the Assignment Judge and Board to meet in the ensuing 30 days in an effort to resolve the issues raised by plaintiffs. The judge added, "In the absence of an agreement or plan of action, the court suggests that the procedures adopted by the Supreme Court to resolve these kinds of disputes be employed. In the interest of justice and the public, that is clearly the most appropriate course of action."

We were advised at oral argument that the Assignment Judge for the Somerset, Hunterdon and Warren vicinage has held meet-

ings with representatives of the Board. There has been no resolution of the issues raised by plaintiffs and neither the Assignment Judge nor the Board has invoked the arbitration procedures under *R.* 1:33–9.

## II.

■ Plaintiffs contend that the judge erred in concluding that plaintiffs may not maintain a private cause of action to compel the Board to comply with *N.J.S.A.* 2B:6–1(b). Plaintiffs recognize that the Legislature has not expressly authorized a private cause of action under *N.J.S.A.* 2B:6–1(b) but assert that a private right of action can be inferred from the statute. We disagree.

■ In determining whether a statute confers upon private litigants a right of action, we consider: (1) whether plaintiff is a member of the class for whose special benefit the statute was enacted; (2) if there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) whether recognition of an implied right of action would be consistent with the purposes of the legislation. *R.J. Gaydos Insurance Agency, Inc. v. National Consumer Insurance Company,* 168 *N.J.* 255, 272, 773 *A.*2d 1132 (2001).

This analytic framework was established by the Supreme Court in *Cort v. Ash,* 422 *U.S.* 66, 95 *S.Ct.* 2080, 45 *L.Ed.*2d 26 (1975), for determining whether federal statutes permit a private cause of action. The test was adopted by our Supreme Court in *Matter of State Comm'n of Investigation,* 108 *N.J.* 35, 41, 527 *A.*2d 851 (1987). In applying this test, we may give "varying weight" to each of the factors but ultimately the result turns upon the Legislature's intent in enacting a particular statute. *R.J. Gaydos, supra,* 168 *N.J.* at 272–273, 773 *A.*2d 1132 (citing *Jalowiecki v. Leuc,* 182 *N.J.Super.* 22, 30, 440 *A.*2d 21 (App.Div.1981)).

Our consideration of the relevant factors begins with the language of the statute, which provides as follows:

a. Suitable courtrooms, chambers, equipment and supplies for the Supreme Court, the Appellate Division of the Superior Court and the Chancery Division,

other than the Family Part of the Chancery Division, of the Superior Court shall be provided at the expense of the State by the Administrative Director in cooperation with the Director of the Division of Purchase and Property in the Department of the Treasury. These courtrooms and chambers shall be located in a courthouse or other public building so far as practicable.

b. *Each county shall provide suitable courtrooms, chambers, equipment and supplies necessary for the processing and decision of cases from that county in the Law Division and the Family Part of the Chancery Division.*

c. A flag of the United States shall be displayed in an appropriate place in each courtroom during all sessions of the court.

d. The sheriff of each county shall provide for security for the Law and Chancery Divisions of the Superior Court sitting in that county in the manner established by the assignment judge in the county.

[*N.J.S.A.* 2B:6–1 (emphasis added).]

Section (a) of *N.J.S.A.* 2B:6–1 was enacted by *L.* 1991, *c* 119, § 1. The other sections were added by *L.* 1991, *c.* 177, § 3.

The Supreme Court has recognized that Title 2B "recodified the division of financial responsibility between the State and the twenty-one counties that had been in place for many years." *Board of Chosen Freeholders v. State,* 159 *N.J.* 565, 568, 732 *A.*2d 1053 (1999) (citing *Law Revision Commission Comment to N.J.S.A.* 2B:5–1). The "division of financial responsibility" in *N.J.S.A.* 2B:6–1(b) benefits the State by requiring local funding for certain court facilities. In addition, the requirement in *N.J.S.A.* 2B:6–1(b) that the counties provide "suitable" facilities for the Law Division and the Family Part provides a benefit to the judicial system as a whole, not to any individual who may use those facilities. Therefore, plaintiffs are not part of a class "for whose *especial* benefit the statute was enacted." *Matter of State Comm'n of Investigation, supra,* 108 *N.J.* at 41, 527 *A.*2d 851 (quoting *Cort, supra,* 422 *U.S.* at 78, 95 *S.Ct.* at 2088, 45 *L.Ed.*2d at 36).

Furthermore, there is no indication that the Legislature intended to confer a private right of action under the statute. *R.J. Gaydos, supra,* 168 *N.J.* at 272, 773 *A.*2d 1132. In discerning the Legislature's intent in this regard, we look to the statute as a whole and consider all of its related sections. *Franek v. Tomahawk Lake Resort,* 333 *N.J.Super.* 206, 218, 754 *A.*2d 1237 (App. Div.), *certif. denied,* 166 *N.J.* 606, 767 *A.*2d 484 (2000). We also

consider other statutes on the same subject matter and give full effect to "each constituent part of an overall legislative scheme." *State v. Hodde,* 181 *N.J.* 375, 379, 858 *A.*2d 1126 (2004) (citing *Matturri v. Bd. of Trs. of Jud. Ret. Sys.,* 173 *N.J.* 368, 383–84, 802 *A.*2d 496 (2002)). *See also In re Military Service Credit for State Teachers,* 378 *N.J.Super.* 277, 282, 875 *A.*2d 978 (App.Div.2005).

The statute pertaining to court facilities is one of several statutes that define the "division of fiscal responsibility" between the State and the counties for the costs of our judicial system. *Board of Chosen Freeholders, supra,* 159 *N.J.* at 568, 732 *A.*2d 1053. In 1992, the voters approved an amendment to the State Constitution which required the assumption by the State of certain costs of the judicial system that previously were borne by the counties. *N.J. Const.* art. VI, § VIII, ¶ 1. The State Judicial Unification Act, *N.J.S.A.* 2B:10-1 to -9, was enacted to implement the 1992 constitutional amendment and, under the Act, the State is required to assume certain "judicial costs." *N.J.S.A.* 2B:10-4(a). The implementing legislation shifted to the State costs associated with judicial personnel and supplies that were previously paid by the counties but the counties remain responsible for the cost of providing court facilities for the Law Division and the Family part as provided in *N.J.S.A.* 2B:6-1(b). *Board of Chosen Freeholders, supra,* 159 *N.J.* at 579, 732 *A.*2d 1053.

The plain language of these statutes shows that the Legislature intended to define the specific financial burdens that would be borne by the counties and by the State for our court system consistent with the 1992 constitutional amendment. The entities directly affected are the State and the twenty-one counties. There is nothing in these statutes to suggest that the Legislature intended to confer a private right of action to enforce any constituent part of this legislative scheme.

 The history of the enactment of *N.J.S.A.* 2B:6–1(b) also demonstrates that the intent underlying this statute was the allocation of fiscal burdens, not the recognition of any private cause of action. To determine legislative intent, the courts may consider extrinsic evidence, including the history of the legislation.

*Cherry Hill Manor Associates v. Paul Faugno*, 182 *N.J.* 64, 75, 861 *A.*2d 123 (2004) (citing *Burns v. Belafsky*, 166 *N.J.* 466, 473, 766 *A.*2d 1095 (2001)). A statute's legislative history often provides "important insight into the Legislature's intent." *Watts v. Camaligan*, 344 *N.J.Super.* 453, 464, 782 *A.*2d 479 (App.Div.2001).

Title 2B was enacted in 1991 at the recommendation of the Law Revision Commission (Commission). *See* Senate Judiciary Committee, *Statement to Senate Bill No. 1347* (January 18, 1990); Assembly Judiciary, Law and Public Safety Committee, *Statement to Senate Bill No. 1347* (June 7, 1990). In its Annual Report for 1989, the Commission states that *N.J.S.A.* 2B:6–1 is one of four proposed statutes "which allocate certain costs of the court system between the State and the counties." *Law Revision Commission Comment to N.J.S.A.* 2B:5–1. The report states:

> The Commission did not deem it appropriate to recommend a change in the allocation of costs and, in these four sections, is attempting to reflect current law and practice. The underlying principle of the proposed sections is that the counties are responsible for the cost of the Law Division and the Family Part of the Chancery Division, while the State is responsible for all other parts of the Superior Court and for the Supreme Court. While some deviations from this principle now occur, it constitutes the overwhelming percentage of current practice.
> [*Ibid.*]

The Commission's report thus makes clear that *N.J.S.A.* 2B:6–1(b) was intended to recodify the existing law defining the respective obligation of the State and the counties for judicial facilities. The statute was intended to define fiscal responsibility, not confer a private right of action.

We are also convinced that recognition of a private right of action is not required to ensure proper enforcement of the statute. *R.J. Gaydos, supra,* 168 *N.J.* at 274–75, 773 *A.*2d 1132. The Assignment Judge is the "chief judicial officer within the vicinage and [has] plenary responsibility for the administration of all courts therein, subject to the direction of the Chief Justice and the rules of the Supreme Court." *R.* 1:33–4(a). Additionally,

> The Assignment Judge shall be the authorized representative of the Chief Justice for the efficient and economic management of all courts within the vicinage. The responsibilities of the Assignment Judge also shall include all such matters affecting county and municipal governments, including but not limited to budgets, personnel, and facilities.

[*R.* 1:33–4(b).]

Pursuant to these rules, the Assignment Judge has responsibility for determining whether facilities provided by a county for the Law Division and the Family Part are "suitable." The Assignment Judge also has responsibility for all matters affecting the county government, including those related to the adequacy of court facilities. Disputes concerning the adequacy of facilities provided by a county are addressed pursuant to *R.* 1:33–9, which provides in part:

> Any dispute between the county governing body and the Assignment Judge concerning the location, size, or other physical characteristics of courtrooms, chambers, office space or related facilities shall, at the request of either party, be resolved by submission of the dispute to arbitration.

In view of the Assignment Judge's broad administrative authority over court facilities in the judge's vicinage, the designation of the Assignment Judge as the individual responsible for all matters pertaining to the affected county government, as well as the procedure established by court rule to resolve disputes with the county concerning court facilities, recognition of a private right of action is not necessary to ensure that *N.J.S.A.* 2B:6–1(b) is properly enforced. *See also R.J. Gaydos, supra,* 168 *N.J.* at 280–81, 773 *A.*2d 1132 (no private right of action for agent to sue insurer for violation of insurance laws where statute vests enforcement authority in the Commissioner of Insurance); *In re State Comm'n of Investigation, supra,* 108 *N.J.* at 35, 527 *A.*2d 851 (no private cause of action to enforce statute mandating confidentiality of the investigations by the State Commission of Investigation where Attorney General has authority to enforce the law); *Jalowiecki v. Leuc, supra,* 182 *N.J.Super.* at 24, 440 *A.*2d 21 (no private right of action conferred by environmental regulations because Department of Environmental Protection has enforcement authority).

### III.

We are additionally convinced that recognition of a private right of action under *N.J.S.A.* 2B:6–1(b) would contravene the separation of powers in our State Constitution.

■ The Supreme Court has the authority to "make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts." *N.J. Const.* art. VI, § 2, ¶ 1. The Chief Justice is the "administrative head" of our judicial system. *N.J. Const.* art. VI, § 7, ¶ 1. These constitutional provisions confer upon the Court exclusive jurisdiction to administer the judicial branch of government. *Williams v. State of New Jersey,* 186 *N.J.* 368, 381–82, 895 *A.2d* 1128 (2006) (citing *Mount Hope Dev. Assocs. v. Mt. Hope Waterpower Project, L.P.,* 154 *N.J.* 141, 150, 712 *A.2d* 180 (1998)). The Court's "far-reaching" administrative authority extends to "all aspects and incidents related to the justice system." *Id.* at 381, 895 *A.2d* 1128 (quoting *Knight v. City of Margate,* 86 *N.J.* 374, 387, 431 *A.2d* 833 (1981)).

In *Matter of 1987 Essex Cty. Jud. Budget,* 109 *N.J.* 89, 92, 533 *A.2d* 961 (1987), the Court commented on the authority it had conferred upon the Assignment Judges for the administration of the courts and the procedures adopted to resolve disputes with counties concerning funding of court facilities and operations:

> Pursuant to *Rule* 1:33–4, we delegated to each Assignment Judge of the state, as the authorized representative of the Chief Justice, plenary responsibility for the administration of all the courts in his [or her] vicinage. Those responsibilities include all matters affecting county and municipal government, including but not limited to budgets, personnel, and facilities; the supervision and efficient management of all court matters; the supervision, superintendence, and allocation of all judges and judicial support personnel; and the appointment and discharge of judicial support personnel. Assignment judges have the inherent power not only to provide the facilities, personnel, and resources reasonably necessary for the operation of the courts but also "to compel the appropriation and expenditure of funds by the coequal executive and legislative branches of government to accomplish such purpose, subject only to bounds of reasonable discretion."

> [*Ibid.* (quoting *In re Court Reorganization Plan of Hudson County,* 161 *N.J.Super.* 483, 491, 391 *A.2d* 1255 (App.Div.1978), *aff'd o.b.,* 78 *N.J.* 498, 396 *A.2d* 1144 (1979)).]

The Court added that, as "a matter of comity" it had exercised its power to administer the courts "sparingly and with deference

to the other branches of government." *Ibid.* The Court noted that counties had "serious and legitimate concerns regarding the budgets for the state trial court system." *Id.* at 93, 533 *A.*2d 961. Nevertheless, the Court stated that its goal was to ensure that the judiciary functioned on a level so that "the administration of justice is not impaired." *Id.* at 93–94, 533 *A.*2d 961 (quoting *In re Union County 1981 Judicial Budget Impasse,* 87 *N.J.* 1, 3, 432 *A.*2d 807 (1981)). The Court adopted the arbitration procedures in *R.* 1:33–9 to accommodate the counties' "legitimate concerns." *Id.* at 94, 533 *A.*2d 961.

Consequently, any interpretation of *N.J.S.A.* 2B:6–1(b) that would permit a cause of action to be brought by a private litigant or a county bar association to enforce a county's obligation to provide "suitable" facilities for the judiciary would contravene the rules adopted by the Supreme Court in the exercise of its "unfettered" and "plenary" power over court administration. *Williams, supra,* 186 *N.J.* at 382, 895 *A.*2d 1128 (citing *Passaic County Probation Officers' Ass'n v. County of Passaic,* 73 *N.J.* 247, 252, 374 *A.*2d 449 (1977)).

We must presume that when it passed *N.J.S.A.* 2B:6–1(b), "the Legislature acted with existing constitutional law in mind and intended the act to function in a constitutional manner." *NYT Cable TV v. Homestead at Mansfield, Inc.,* 111 *N.J.* 21, 26, 543 *A.*2d 10 (1988) (quoting *State v. Profaci,* 56 *N.J.* 346, 349, 266 *A.*2d 579 (1970)). We are therefore satisfied that the Legislature did not intend to confer a private right of action to enforce the counties' obligation under *N.J.S.A.* 2B:6–1(b) to provide "suitable" facilities for the courts.

## IV.

Plaintiffs additionally contend that they may maintain an action in lieu of prerogative writs and seek a writ of mandamus requiring the county to provide "suitable" court facilities. In their complaint, plaintiffs allege that the Board's failure to provide appropriate facilities is arbitrary, capricious, unreasonable and violates the Board's duty "pursuant to law."

■ Mandamus is an appropriate remedy: "(1) to compel *specific* action when the duty is ministerial and wholly free from doubt, and (2) to compel the exercise of discretion, but *not* in a specific manner." *Loigman v. Tp. Com. of Middletown*, 297 *N.J.Super.* 287, 299, 687 *A.*2d 1091 (App.Div.1997). *See also Cohen v. Bd. of Trustees of University of Med. and Dentistry of N.J.*, 240 *N.J.Super.* 188, 199, 572 *A.*2d 1191 (Ch.Div.1989) (holding that mandamus is available only to compel performance of a specific, mandated ministerial obligation).

We note initially that to the extent plaintiffs are seeking to compel the Board to renovate, upgrade or improve Warren County's court facilities, their claim is necessarily premised upon *N.J.S.A.* 2B:6–1(b). Indeed, plaintiffs' complaint indicates that they are seeking to compel the Board to act "pursuant to law." The law that requires a county to provide "suitable" court facilities is *N.J.S.A.* 2B:6–1(b). However, as we have determined, plaintiffs may not seek relief under that statute. They may not otherwise seek to enforce the County's statutory duty to provide "suitable" court facilities by characterizing this case as an action in lieu of prerogative writs rather than a private right of action under *N.J.S.A.* 2B:6–1(b).

Moreover, mandamus is not an available remedy for the relief plaintiffs are seeking. Here, there is no allegation that the Board has failed entirely to provide court facilities in Warren County. Rather, plaintiffs contend that the Board has not provided facilities that are "suitable" for the judiciary and the public. As we stated previously, plaintiffs allege that the court facilities in Warren County are "grossly overcrowded," "in a state of disrepair," and "unsafe and unhealthy." Plaintiffs allege that the Board has acted arbitrarily and capriciously in failing to adopt the recommendations of the consultants who were retained by the Board to assess the facilities.

Surely, determinations as to what steps, if any, the Board should take respecting the County's court facilities are matters that entail the exercise of judgment and discretion. Plaintiffs are not seeking to compel the Board to perform ministerial acts.

*Loigman, supra,* 297 *N.J.Super.* at 299, 687 *A.2d* 1091. Moreover, plaintiffs are not seeking to compel the Board to undertake a "general exercise of discretion." *Ibid.* Rather, plaintiffs seek to compel the Board to exercise its discretion in a very specific manner. We are convinced that plaintiffs may not maintain an action in lieu of prerogative writs to seek such relief.

Affirmed.