NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1344-20

ESTATE OF JAMES BURNS,
by and through BRIAN BURNS,
EXECUTOR,

     Plaintiff-Respondent,

v.

CARE ONE AT STANWICK, LLC
d/b/a CARE ONE HARMONY
VILLAGE AT MOORESTOWN
and CARE ONE, LLC,

     Defendants-Appellants.

_____

> **APPROVED FOR PUBLICATION**
>
> **June 15, 2021**
>
> **APPELLATE DIVISION**

Argued April 27, 2021 – Decided June 15, 2021

Before Judges Fisher, Gilson and Gummer.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-2044-17.

Anthony Cocca argued the cause for appellants (Cocca & Cutinello, LLP, attorneys; Anthony Cocca and Katelyn E. Cutinello, of counsel and on the briefs).

Jonathan F. Lauri argued the cause for respondents (Stark & Stark, attorneys; Denise Mariani and Jonathan F. Lauri, of counsel and on the briefs).

Herbert Kruttschnitt, III, argued the cause for amicus curiae New Jersey Defense Association (Dughi, Hewitt & Domalewski, attorneys; Herbert Kruttschnitt, III and Ryan Alan Notarangelo, of counsel and on the brief).

Sherry L. Foley argued the cause for amicus curiae New Jersey Association for Justice (Foley & Foley, attorneys; Sherry L. Foley and Timothy J. Foley, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this interlocutory appeal, we consider whether inhabitants of an assisted living residence may assert a private cause of action for the facility's alleged breach of their statutory bill of rights. After closely analyzing the statutes applicable to assisted living residences as well as other legislative enactments for similar facilities, we conclude the Legislature did not intend to create a private cause of action despite having done so in similar circumstances; we also decline the invitation to incorporate such a private cause of action into the common law.

I

James Burns was eighty-eight years old when admitted to Care One Harmony Village at Moorestown on December 29, 2014. He had a history of Lewy body dementia, a disorder that has mental and physical effects. Burns was

transferred to another facility for long-term care on September 6, 2015, and died eleven days later. His estate commenced this wrongful death action on September 13, 2017, alleging Burns had fallen several times and developed pressure ulcers and infections during his stay at Care One,[1] and that he died because of the substandard care Care One provided.

In the complaint, plaintiff asserts claims sounding in negligence and intentional torts; it does not allege any statutory causes of action. When discovery ended in early January 2020, Care One moved for summary judgment, seeking a determination that plaintiff could not assert a claim based on Care One's breach of any state or federal statutes or regulations. During oral argument, plaintiff's attorney confirmed that no statutory or regulatory violation had been or could be asserted, that plaintiff had only a medical negligence claim for the alleged treatment Burns received at Care One, and that he anticipated his experts may refer to a breach of statutes or regulations as evidence of the applicable standard of care. Care One's motion was denied.

In April 2020, plaintiff moved for partial summary judgment, seeking an order declaring that Care One is subject to the rights granted those who reside in a facility falling within the parameters of the Rooming and Boarding House

---

[1] For simplicity's sake, we refer to all defendants as Care One.

Act, N.J.S.A. 55:13B-1 to -21. Plaintiff also sought a ruling permitting the jury to consider whether decedent's rights under this Act – the opportunity to "achieve the highest level of independence, autonomy, and interaction with the community," N.J.S.A. 55:13B-19(j), and "a safe and decent living environment and considerate and respectful care that recognizes the dignity and individuality of the resident," N.J.S.A. 55:13B-19(l) – were violated by Care One. The Rooming and Boarding House Act expressly authorizes a private cause of action for enforcement of these and other rights and allows for an award of attorneys' fees to a prevailing plaintiff. N.J.S.A. 55:13B-20.

The trial judge granted plaintiff's motion, subject to plaintiff proving at trial that Care One was a facility that, by legislation, allowed plaintiff a private cause of action. The judge concluded that the Rooming and Boarding House Act, as well as the Dementia Care Home Act, N.J.S.A. 26:2H-148 to -157, expressed the Legislature's determination that persons suffering from dementia – like decedent – are vulnerable and in need of protections enhanced by the existence of a private cause of action for their breach.

In seeking leave to appeal the judge's grant of plaintiff's motion for partial judgment, Care One argues that it operates an assisted living residence and that although the Legislature enacted a bill of rights for assisted living residents,

N.J.S.A. 26:2H-128(b), the Legislature did not expressly incorporate a right to pursue a private cause of action.   We granted leave to appeal.

II

The path through numerous statutes and regulations leading to the conclusion Care One would have us reach – that a resident or the personal representative of a resident has no private cause of action for a breach of an assisted living resident's bill of rights – is not entirely clear.   In seeking illumination, we look to the legislation concerning residential health care facilities, rooming and boarding houses, dementia care homes, and nursing homes.

As early as 1953, the Legislature granted the Department of Health or the Department of Community Affairs, "as appropriate," N.J.S.A. 30:11A-1, licensing and regulatory authority over the State's "residential health care facilities," N.J.S.A. 30:11A-3.  These facilities were defined, in part, by the fact that their residents were "not in need of skilled nursing care" and were not to be given "skilled nursing care."  N.J.S.A. 30:11A-1.  The Rooming and Boarding House Act was enacted in 1979 to give the Department of Community Affairs authority over otherwise unregulated rooming houses and boarding houses.  The Rooming and Boarding House Act incorporated a bill of rights for "residents of

rooming houses, boarding houses and residential health care facilities," N.J.S.A. 55:13B-17, delineated in N.J.S.A. 55:13B-19.[2]  This legislation also affirmatively declared that a resident "shall have a cause of action against any person committing" a violation of the bill of rights, that

> may be brought in any court of competent jurisdiction to enforce such rights and to recover actual and punitive damages for their violation.  Any plaintiff who prevails in any such action shall be entitled to recover reasonable attorney's fees and costs of the action.
>
> [N.J.S.A. 55:13B-21.]

In 1976, the Legislature enacted the Nursing Home Responsibilities and Residents' Rights Act, N.J.S.A. 30:13-1 to -17, by virtue of having found that "the well-being of nursing home residents" in this State required "a delineation of the responsibilities of nursing homes and a declaration of a bill of rights for such residents."  N.J.S.A. 30:13-1.  This Act established the many rights of nursing home residents, N.J.S.A. 30:13-5, and expressly declared that residents' "shall have a cause of action against any person" violating their rights that would include the right to "recover actual and punitive damages" and "reasonable

---

[2] N.J.S.A. 55:13B-19 sets forth a bill of rights possessed by "[e]very resident of a boarding facility."  In N.J.S.A. 55:13B-18, the Legislature declared that "boarding facility" means "rooming house, boarding house or residential health care facility."

A-1344-20

attorney's fees and costs" incurred by a prevailing plaintiff in such an action, N.J.S.A. 30:13-8; see also N.J.S.A. 30:13-4.2.

In 1997, the Legislature acted to ensure the protection of the residents of these three types of facilities – rooming houses, boarding houses, and residential health facilities – who were afflicted by Alzheimer's disease, dementia or other related disorders by including definitions of those conditions, see N.J.S.A. 55:13B-3(k) and (l), in the existing legislation and by authorizing the Commissioner of the Department of Community Affairs to establish standards. N.J.S.A. 55:13B-6(n).

Nearly twenty years later, in 2016, the Legislature enacted the Dementia Care Home Act, N.J.S.A. 26:2H-148 to -157. In its definitional provision, this Act defined the residents of "a dementia care home" as adults "with Alzheimer's disease and related disorders or other forms of dementia," who also: are "ambulant with or without assistive devices"; have been "certified by a licensed physician . . . not in need of skilled nursing care"; and "except in the case of a person 65 years of age or over, [are] in need of dietary services, supervision of self-administration of medications, supervision of and assistance in activities of daily living, or assistance in obtaining health care services." N.J.S.A. 26:2H-150(b). This Act further establishes that a resident of a dementia care home

"shall not be given skilled nursing care while a resident" except in cases of "emergencies or during temporary illness for a period of one week or less." Ibid.

The Dementia Care Home Act also incorporated a bill of rights for the residents of those homes, N.J.S.A. 26:2H-154(a), and expressly allows for a private cause of action on a breach of those rights for both "actual and punitive damages" as well as the right of a prevailing plaintiff to recover reasonable attorney's fees. N.J.S.A. 26:2H-154(c).

In 2002, prior to enactment of the Dementia Care Home Act, the Legislature recognized the existence of "assisted living residence[s]," defining them as facilities that "provide apartment-style housing and congregate dining." N.J.S.A. 26:2H-7.15. The Legislature defined "assisted living" as "a coordinated array of supportive personal and health services, available 24 hours per day, which promote resident self-direction and participation in decisions that emphasize independence, individuality, privacy, dignity, and homelike surroundings to residents who have been assessed to need these services, including residents who require formal long-term care." Ibid. The Department of Health, which regulates assisted living residences, has determined that they must be capable of providing: "assistance with personal care, nursing, pharmacy, dining, activities, recreational, and social work services to meet the

individual needs of each resident." N.J.A.C. 8:36-8.2(b). Regulations allow such facilities to establish programs to meet the needs of residents with Alzheimer's disease and other forms of dementia, providing individualized care in light of the cognitive and functional abilities of residents admitted to the program. N.J.A.C. 8:36-19.

In 2011, as it had with these other types of facilities, the Legislature enacted a bill of rights for assisted living residents. See N.J.S.A. 26:2H-128(b). Unlike all its enactments concerning other facilities, the Legislature neither expressly authorized nor expressly precluded an assisted living resident's right to pursue a private cause of action for the violation of the rights enumerated in N.J.S.A. 26:2H-128(b).

III

In considering the parties' arguments – as well as those asserted by amici` – we acknowledge that the answer to the issues posed is not readily apparent. Our review of various similar legislation set forth above reveals that the Legislature, over the course of many decades, repeatedly extended its reach, encompassed various types of facilities within its protection, and refined its regulation of residences for the elderly and infirm. To summarize, the Legislature:

- in 1953 began regulating "residential health care facilities";

- in 1976 enacted the Nursing Home Responsibilities and Residents' Rights Act;

- in 1979 expanded its regulation of "residential health care facilities" to include rooming and boarding houses;

- in 1997, folded patients afflicted with Alzheimer's disease, dementia, and other related disorders into the protections provided for residents of residential health care facilities, rooming houses, and boarding houses; and

- in 2016, began regulating what it described as dementia care homes.

In all these instances, the Legislature declared bills of rights for residents and expressly authorized a resident's right to pursue a private cause of action for violations of those bills of rights. But when it recognized assisted living residences in 2002 and enacted a bill of rights applicable to those residences in 2011, the Legislature did not expressly authorize private causes of action for violations of those rights.

By the same token, the Legislature did not prohibit private causes of actions for assisted living residents. It just didn't say anything about it. There are two ways a court may proceed in this circumstance. A court might either (a) adopt into the common law a private cause of action based on the legislative

10

policy of protecting the elderly and infirm or (b) ascertain whether, through application of statutory-interpretation guidelines, the Legislature intended to create a private cause of action despite its silence.

## A

As we have observed, the Legislature was silent about the existence of a private cause of action for assisted living residents but it was not entirely silent about its desire to create rights and protect those residents; far from it. The 2011 bill of rights for assisted living residents created forty-two rights that focus on the retention of their rights: to "independence" and "individuality," N.J.S.A. 26:2H-128(b)(3); to "be treated with respect, courtesy, consideration, and dignity," N.J.S.A. 26:2H-128(b)(4); to "make choices with respect to services and lifestyle," N.J.S.A. 26:2H-128(b)(5); to "personalized services and care," N.J.S.A. 26:2H-128(b)(1); to "a level of care and services that address the resident's changing physical and psychosocial status," N.J.S.A. 26:2H-128(b)(2); and to "retain and exercise all constitutional, civil, and legal rights to which the resident is entitled by law," N.J.S.A. 26:2H-128(b)(39).

In so many words, plaintiff and amicus New Jersey Association for Justice argue that we should be responsive to the thrust of these statutes and the Legislature's establishment of these rights in determining whether or how the

common law should provide remedies to vindicate these interests. This process is nothing new. Indeed, it presents an age-old question, as revealed by what Justice Holmes had to say in similar circumstances while riding the circuit more than a century ago:

> The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed. The major premise of the conclusion expressed in a statute, the change of policy that induces the enactment, may not be set out in terms, but it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before.
>
> [Johnson v. United States, 163 F. 30, 32 (1st Cir. 1908).]

Justice Cardozo later restated this concept, asserting it would be "a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied"; "[t]here are times," Justice Cardozo observed, "when uncertain words are to be wrought into consistency and unity with a legislative policy which is itself a source of law, a new generative impulse transmitted to the legal system." Van Beeck v. Sabine Towing Co., 300 U.S. 342, 350-51 (1937).

Our approach toward the common law's recognition of new causes of action in the face of legislative recognition of an important policy but silence in

12

the recognition of remedies is not dissimilar.  See Jarrell v. Kaul, 223 N.J. 294, 307-08 (2015); In re Resolution of State Comm'n of Investigation, 108 N.J. 35, 40-41 (1987); Renz v. Penn Central Corp., 87 N.J. 437, 456 (1981); Haynes v. First Nat'l State Bank, 87 N.J. 163, 188-89 (1981); Lally v. Copygraphics, 85 N.J. 668, 670-71 (1981), aff'g, 173 N.J. Super. 162 (App. Div. 1980); Winslow v. Corporate Express, Inc., 364 N.J. Super. 128, 137 (App. Div. 2003).

And so, the Legislature's silence about the right of assisted living residents to bring an action for enforcement of the statutory bill of rights does not, as Care One argues, end the inquiry.  It may, in fact, require no great leap – considering the Legislature's recognition of a public interest in the care and protection of the elderly, particularly those lacking the ability to voice their complaints – to recognize an implied private cause of action for a breach of the assisted living resident's bill of rights.

In support of such a theory, it would be sensible to view the statutory bill of rights as establishing, as it states, "rights," not just, as Care One would apparently have it, mere "suggestions" that a facility would be permitted to either comply with or not without fear of a resident's pursuit of a civil remedy.[3]

_____

[3] We are mindful that a facility's failure to abide by the bill of rights may affect its licensing.  See, e.g., Kleine v. Emeritus at Emerson, 445 N.J. Super. 545, 548 n.5 (App. Div. 2016).  Additionally, we need not – and therefore do not –

The very use of the phrase "bill of rights" – an allusion to the first ten amendments to our federal constitution that limit or prohibit government intrusion into individual liberties – conjures up for the American mind more than mere suggestions. Considering this broad creation of rights – both great and small – it would not be inconsistent with the approach of the common law that a private cause of action be recognized for a violation of those rights.

B

Looking at the issue as a matter of statutory interpretation, we are counseled to read statutes sensibly in light of their surroundings and other similar or even unrelated legislation. See, e.g., Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 175-76 (2006). The former highest court of this State once said, "[a] statute must be construed with reference to the entire system of which it forms a part[;] . . . statutes upon cognate subjects may be considered in arriving at the legislative intention, though not strictly in pari materia." Modern Indus. Bank v. Taub, 134 N.J.L. 260, 263 (E. & A. 1946). See also 2B Norman J. Singer, Sutherland Statutory Construction, § 53:3 (7th ed. 2012) (recognizing that "the interpretation of a doubtful statute may be influenced by the language

---

determine whether the Department of Health may sue for the enforcement of this bill of rights.

of other statutes which are not specifically related, but which apply to similar persons, things, or relationships").

The Legislature has repeatedly demonstrated its ability to create private causes of action and, in this same general context, has chosen to expressly declare what types of facilities that house the elderly and infirm may be the subject of a private cause of action for breaching applicable bills of rights and appended regulations. It would not be outside our general approach toward statutory interpretation to view the Legislature's silence about private causes of action against assisted living residences as an ambiguity and to reach a conclusion that the failure to authorize a private cause of action might have been an oversight. In this way, a private cause of action could be found by a logical implication of what the legislation meant, see 2B Sutherland Statutory Construction, § 55:3 (recognizing that "[i]f a statute creates a right but does not indicate expressly the remedy, one is usually implied, and courts may resort to the common law"), there being no other evidence that the Legislature intended to treat assisted living residences in a manner different from how it had treated nursing homes, dementia care homes, residential health care facilities, rooming houses, and boarding houses.

C

We are persuaded against either concluding the common law should recognize a private cause of action or that the Legislature intended to include a private cause of action in its enactments concerning assisted living residences. In proceeding in either direction we cannot ignore the legislation concerning other similar facilities that we have already mentioned. As to each of these types of facilities, the Legislature expressly declared both a bill of rights and a private cause of action. It was only when it considered assisted living residences that the Legislature enacted a bill of rights – nine years later – and, in doing so, said nothing about whether it intended to create a private cause of action. Moreover, having departed from the template previously employed in regulating other facilities, the Legislature later felt the need to expressly declare a private cause of action when regulating dementia homes. We find its one departure from the norm to be telling.

When considering the meaning of legislation, we assume the Legislature is "thoroughly conversant with its own legislation and the judicial construction of its statutes." Brewer v. Porch, 53 N.J. 167, 174 (1969); see also Lozano v. Frank DeLuca Constr., 178 N.J. 513, 532 (2004). As the examples we have provided reveal, the Legislature certainly knows how to authorize private causes

16

of action when it desires to do so. We, thus, find meaning when the Legislature acts differently from what it normally does in similar settings. See State v. Harper, 229 N.J. 228, 238 (2017). Like the dog that didn't bark in the night, we are satisfied that by not expressly declaring a private cause of action for assisted living residents, the Legislature consciously chose not to create one.

This interpretation counsels against the adoption into the common law of a private cause of action for a breach of N.J.S.A. 26:2H-128. Even though there is no doubt the Legislature has recognized and acted on a strong public interest in protecting the elderly and infirm, and even though that legislative recognition infuses the common law with "a new generative impulse," Van Beeck, 300 U.S. at 350-51, we should nevertheless tread lightly before pushing the common law to the recognition of such a new cause of action. In this regard, we must weigh what we have found to be the Legislature's presumably conscious decision not to recognize this new cause of action. That circumstance counsels in favor of a more modest approach.

Analytically, our courts will recognize an implied private cause of action emanating from legislation by employing a three-part test that asks:

> whether the plaintiff is "one of the class for whose especial benefit the statute was enacted"; whether there is any evidence that the Legislature intended to create a private cause of action under the statute; and whether

17

implication of a private cause of action in this case would be "consistent with the underlying purposes of the legislative scheme."

[State Comm'n of Investigation, 108 N.J. at 41 (quoting Cort v. Ash, 422 U.S. 66, 78 (1975)); see also Jarrell, 223 N.J. at 307.]

In employing this test here, there is no doubt that decedent falls within the class of individuals the bill of rights was intended to protect. It also seems likely that the implication of a cause of action would be consistent with the reason the bill of rights was enacted. It is the second part of the test, however, that calls into doubt the soundness of our recognizing a private cause of action.

The Legislature is, as we have already said, presumed to be cognizant of its existing related laws designed to protect the rights of the elderly and infirm. But, unlike other circumstances where private causes of action have been recognized despite legislative silence, the Legislature would be familiar with the fact that someone like decedent would be entitled to press a negligence claim against an assisted living residence which has failed to provide proper care. Additionally, many of the rights delineated in the statutory bill of rights already present judicially cognizable causes of action without the creation of a private cause of action for all those enumerated. See, e.g., N.J.S.A. 26:2H-128(b)(16) (the right to "be free from physical and mental abuse and neglect").

18

To be sure, those individuals who are benefited by the statutory bill of rights likely lack the ability to voice their concerns about their treatment and are dependent on others for the very reason they reside in these types of facilities. But we simply cannot ignore that the Legislature was appreciative of that fact and chose not to expressly recognize a private cause of action despite its contrary approach in enacting other similar legislation. In short, we find absent the second part of the applicable three-part test, and in the final analysis, we reject the argument that the common law should recognize a private cause of action in this instance.[4]

---

[4] It may be that the interest in our recognition of a private cause of action is generated by the statutory authorization – accompanied in the other legislation we have referred to – of fee-shifting in favor of prevailing plaintiffs. Even if we were to recognize a private cause of action here, we could not take the further step of declaring its incorporation of a prevailing plaintiff's right to an award of fees. Our jurisprudence has long remained committed to the American rule that litigants bear their own legal fees, Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 404 (2009), and the Supreme Court has recognized a "strong public policy against shifting counsel fees," Innes v. Marzano-Lesnevich, 224 N.J. 584, 592 (2016). A party may be compelled to pay the legal fees of another only: in those types of cases described by rule, R. 4:42-9(a); when the parties contractually agree; in other cases falling with recognized and "carefully limited" exceptions from the American rule, In re Estate of Vayda, 184 N.J. 115, 121 (2005); and when authorized by statute, R. 4:42-9(a)(8). While the Supreme Court may expand the scope of these American rule exceptions – through either its rule-making authority or by decisional law that expands the additional fonts for such an award recognized in cases like Saffer v. Willoughby, 143 N.J. 256, 271 (1996) – other courts cannot.

The common law may spread to places where the Legislature has not ventured but not without great and careful consideration for the wisdom of the extension, lest before long courts and legislative bodies find themselves on divergent and conflicting paths. If today's judgment is overly cautious or mistaken about the legislative intent, the Legislature is in the best position to correct or alter our course. See Plastic Surgery Ctr., P.A. v. Malouf Chevrolet-Cadillac, Inc., 241 N.J. 112, 113 (2020). Until then, we conclude there is no private cause of action for the breach of the assisted living facility's bill of rights contained in N.J.S.A. 26:2H-128(b).

IV

The order states that the grant of Care One's motion for partial summary judgment is "subject to proof at trial." The meaning of this is revealed by the judge's oral decision in which, in sum or substance, he distinguished between assisted living residents who suffer from Alzheimer's, dementia or some other similar malady, and those who do not. Those in the former class, in the judge's view, possess a private cause of action; the latter does not. We disagree. There is nothing in the legislation to reveal an intent to create separate classes of assisted living residents.

20

The judge's oral decision also suggests that if plaintiff can prove Care One was operating something other than an assisted living residence, a jury could consider and ultimately find a violation of the bill of rights applicable to that other type of facility. We reject this position. Care One's facility is governed by the license issued to it as an assisted living residence. Whether, during decedent's stay there, Care One was operating something other than that should be determined only by the Department of Health, which possesses special expertise in these matters, not by either the trial judge or a jury. See Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 269 n.1 (1978). In a circumstance like this, a court must determine whether the agency has exclusive or primary jurisdiction. Muise v. GPU, Inc., 322 N.J. Super. 140, 158-59 (App. Div. 2000). When the claim itself falls within the agency's exclusive jurisdiction, it is subject to dismissal because of the failure to exhaust administrative remedies. But, when a court has jurisdiction over the claim and a pivotal aspect presents a question falling within an agency's expertise, a court will retain jurisdiction, stay the action, and allow for the agency's determination of that aspect. See generally Curzi v. Raub, 415 N.J. Super. 1, 20-21 (App. Div. 2010).

In this case we need not decide whether it is exclusive or primary jurisdiction that the Department of Health would possess over a claim that Care

One acted other than as licensed because the claim should not proceed in either event. If the former, dismissal would follow. And, although a finding of primary jurisdiction would not require dismissal, we are satisfied it is too late here to allow for a stay and a time-consuming detour into an administrative proceeding.

Our reason for reaching this conclusion dovetails with Care One's last argument in which it argued we should bar plaintiff's bill-of-rights claim because it was not asserted until an extremely late point in the litigation, indeed, well after plaintiff said in response to an earlier summary judgment motion that no such claim had been asserted. Although we reject Care One's argument that the claim is barred by the applicable statute of limitations,[5] plaintiff's delay in its pursuit of such a claim justifies our conclusion that this nearly four-year-old litigation should not be further delayed.

\* \* \*

---

[5] Care One's statute-of-limitations argument is without merit because the original complaint was timely filed and a bill-of-rights claim would relate back to the time of the original filing because it arises from the same transactions or occurrences that gave rise to the allegations in the original complaint. See R. 4:9-3; Harr v. Allstate Ins. Co., 54 N.J. 287, 299-300 (1969).

A-1344-20

The trial court's December 2, 2020 order is reversed. We remand for further proceedings consistent with this opinion but do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION